IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

    **Plaintiff,**

**v.**
                                      **Civil Action No. 5:21-cv-00181**
                                      **Honorable Frank W. Volk**

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision, JEFF
MCPEAKE, individually, BRIAN WHITE,
individually, BOBBY STUMP, individually,
KYLE LUSK, individually,

    **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANT LOUISE E. GOLDSTON'S**
**MOTION TO DISMISS**

    **COMES NOW** this Defendant, the Hon. Louise E. Goldston, by counsel Jennifer E. Tully,

Adam K. Strider, and the law firm of Bailey & Wyant, PLLC, and hereby offers for this Honorable

Courts' consideration the following Memorandum in support of their contemporaneously-filed

Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  ISSUE OF LAW

    Defendant Louise E. Goldston must be dismissed from this case as judicial immunity

applies to all claims by the Plaintiff.

## II.  STATEMENT OF THE CASE

    The Plaintiff, Matthew Gibson, was a party to a divorce action in the Family Court of Raleigh

County, West Virginia, appearing for final hearing in that matter on or about September 18, 2018.

Defendant Louise E. Goldston is a Family Court Judge of the 13th Family Court Circuit, based in

Beckley, Raleigh County, West Virginia, and presided over the Plaintiff's divorce hearing.  At that

hearing, the Court granted the parties a divorce, and adopted a settlement agreement between the

parties as to property distribution. *Complaint, ¶ 11.*  The Plaintiff also alleges that, at that hearing,

his ex-wife's attorney, Defendant Lusk, advised the Plaintiff against stating that assets aren't at his

home, because Judge Goldston would go to his house and look. *Complaint, ¶ 17.*

On or about September 26, 2019, the Plaintiff's ex-wife filed a Petition for Contempt against

the Plaintiff, alleging that he had not turned over certain items of property as determined in the

settlement agreement, or that some items he did turn over were damaged. *Complaint, ¶ 14.*  Prior to

the hearing on this Petition for Contempt, Defendant Lusk allegedly contacted the Plaintiff with a

settlement demand. *Complaint, ¶ 18.* At a subsequent hearing on that Petition for Contempt, the

Plaintiff alleges that this Defendant *sua sponte* stopped the hearing, asked the Plaintiff for his home

address, and announced that all parties would reconvene at the Plaintiff's home to determine whether

certain disputed items of property were there. *Complaint, ¶ 16.*

The Plaintiff claims that, upon arrival at his house, he made a motion for this Defendant to

recuse herself as he believed she had become a witness by being present at the house, which motion

was denied. *Complaint, ¶ 19.*  The Plaintiff claims he then verbally denied any of the parties present

access to his home without a search warrant, whereafter he was allegedly told that he would be jailed

if he did not let them in.  *Complaint, ¶ 20.* Thereafter, this Defendant allegedly permitted law

enforcement personnel, the Plaintiff's ex-wife, and her attorney into the Plaintiff's residence to

search for disputed items of personal property. *Complaint, ¶ 27.*  Several such items were allegedly

removed, some of which the Plaintiff claims were not included in the settlement agreement.

*Complaint, ¶ 28.*  The Plaintiff claims that, at certain points, he attempted to video record the events,

and was told to stop, again being threatened with arrest if he persisted. *Complaint, ¶ 22.*

2

The Plaintiff claims that Judge Goldston has carried out this practice of home searches in divorce cases for around twenty (20) years. *Complaint, ¶ 8.* He claims that the fact that Judge Goldston is known to do this gives an advantage to represented parties over non-represented parties, as attorneys are familiar with the habits of judges and can therefore anticipate this occurring, whereas *pro se* parties are not. *Complaint, ¶ 91.* He also alleges that there was an explicit or tacit agreement between Judge Goldston and Defendant Lusk to specifically advantage his clients. *Complaint, ¶ 45.*

Based on the foregoing, the Plaintiff has pled five (5) counts in his Complaint against this Defendant, all pursuant to 42 U.S.C. § 1983. First, he alleges an unlawful search and seizure claim in violation of the Fourth Amendment to the United States Constitution for ordering the search of the Plaintiff's home, allegedly without a warrant. *Complaint, ¶¶ 46-62.* Second, he alleges violations of the First Amendment for preventing him from video recording the events. *Complaint, ¶¶ 63-75.* Third, he alleges violations of the Fourteenth Amendment Due Process Clause for allegedly failing to provide him with due process during the contempt hearing. *Complaint, ¶¶ 79-88.* Fourth, he alleges violations of the Equal Protection Clause of the Fourteenth Amendment via his claims that Judge Goldston's practice of home inspections disadvantaged pro se litigants. *Complaint, ¶¶ 89-100.* Finally, he alleges that Judge Goldston conspired with Defendant Lusk to take the aforementioned actions. *Complaint, ¶¶ 100-109.* This Defendant now moves to dismiss the Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### III. STANDARDS OF REVIEW

**A.  Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).**

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).  On a motion to dismiss brought pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that

subject matter jurisdiction exists. See *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

This is because federal courts are courts of limited subject matter jurisdiction. See *United States ex*

*rel Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2008). Further, there is no presumption that the

federal court has jurisdiction. See *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir.

1999). When faced with a challenge to its subject matter jurisdiction, the federal court is to "regard

the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings

without converting the proceeding to one for summary judgment." See *Evans* at 647 (quoting

*Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

While not converting the motion to one for summary judgment, the district court "should apply the

standard applicable to a motion for summary judgment" and the moving party should prevail "only if

the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

matter of law." *Richmond* at 768.

**B. Motion to Dismiss for failure to state a claim under Rule 12(b)(6).**

"In general, a motion to dismiss for failure to state a claim should not be granted unless it

appears certain that the plaintiff can prove no set of facts which would support its claim and would

entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs.,*

*Inc. v. Matkari,* 7 F.3d 1130 (1993) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.

1991)). Nonetheless, the Fourth Circuit has noted, "[t]he court need not, however, accept

unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory

factual allegations devoid of any reference to actual events." *Eastern Shore Mkts., Inc. v. J.D.*

*Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "The inclusion of conclusory legal terms,

4

however, does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion, 'since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.'" *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir.1994); *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir.2001)).

"Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, [the 4th Circuit has] held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity. *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  It is well established that, in deciding a motion to dismiss, a court may consider any document that is a matter of public record as well as any exhibits attached to the complaint. *Allen v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 92383, 2011 WL 3654451 (D. Md., Aug. 11, 2001) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

## IV. ARGUMENTS

### A. As a judicial officer acting in that capacity, Judge Goldston is absolutely immune from Plaintiff's claims.

It is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 U.S. Dist. LEXIS 86198, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted). As stated, "[j]udicial

5

immunity is an absolute immunity: it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely." *Lemon v. Hong*, No. CV ELH-16-979, 2016 U.S. Dist. LEXIS 71756, 2016 WL 3087451, at *4 (D. Md. June 2, 2016) (citing *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages [*13] in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). *Black v. West Virginia*, No. 3:19-cv-00561, 2019 U.S. Dist. LEXIS 172020, at *12-13 (S.D. W. Va. Sep. 11, 2019)

The Plaintiff's claims herein against Judge Goldston are subject to dismissal due to the application of judicial immunity. As stated above, judges are generally absolutely immune from suits for money damages. See, e.g., *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L. Ed. 646 (1872)) (internal quotation marks omitted).

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and

eventual trial. See *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)

("Immunity applies even when the judge is accused of acting maliciously and corruptly"); see also

*Harlow v. Fitzgerald*, 457 U.S. 800, 815-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (allegations

of malice are insufficient to overcome qualified immunity).

There are only two sets of circumstances in which judicial immunity is overcome. First, a

judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's role as

a judge. See *Forrester v. White*, 484 U.S. 219, 227-229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988);

*Stump v. Sparkman*, 435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).  Second, a judge is

not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Stump* at 356-357.  This does not mean, however, that judges are liable for actions which are merely

beyond their authority.  "A judge will not be deprived of immunity because the action he took was in

error, was done maliciously, or was in excess of his authority."  *Id*. at Syl. Pt. (a).  "[W]hether an act

by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function

normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with

the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

The scope of this immunity was addressed at length by the Supreme Court in *Mireles v.

Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).  In *Mireles*, a California judge ordered that

bailiffs bring an attorney who had failed to appear for the calling of the calendar into the courtroom,

and instructed them to use excessive force on him in the process.  The Supreme Court held that this

action, while certainly violative of the attorney's rights and outside the judge's authority, was not

outside his judicial immunity, reasoning as follows:

> Of course, a judge's direction to police officers to carry out a judicial order with
> excessive force is not a "function normally performed by a judge." *Stump v.
> Sparkman*, 435 U.S. at 362. But if only the particular act in question were to be

7

scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id*., at 356. See also *Forrester v. White*, 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S. at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

*Mireles* at 12-13.

The facts of this case are a direct allegory to *Mireles*.  Even if it is assumed that Judge Goldston exceeded her authority in ordering the hearing moved to the Plaintiff's home, and ordering that he permit his home to be searched by his ex-wife, she did not leave her role as a judge.  This entire exercise was the adjudication of a motion in a divorce case, even if done in an unorthodox or arguably impermissible manner.  This is what is meant in *Stump* by saying that a judge is immune from liability arising from situations in which a plaintiff "dealt with the judge in his judicial capacity." *Stump* at 362.  They are dealing with a judge, as a judge.  Judge Goldston would not be immune from liability if she had rear-ended the Plaintiff's car at a stoplight, because she is not acting as a judge in that circumstance.  But actions she takes with regard to litigants appearing before her which are calculated to advance the resolution of their dispute are insulated from liability.

The fact that Judge Goldston exited the courtroom for these proceedings does not mean that she exited her role as a judge.  It is not uncommon for a judge, with or without a jury, to move proceedings to the site of an incident in order to view the scene or evidence.

Nor did she go beyond her judicial capacity in allegedly prohibiting the Plaintiff, or those at his direction, from video recording the events.  In fact, the West Virginia Rules of Practice and Procedure for Family Courts expressly prohibit persons who are not court officials from recording

judicial proceedings.  See W. Va. R. Fam. Ct. 8.  Therefore, prohibiting the recording of family court

proceedings, far from being an affront to the Constitution, is an ordinary and expected aspect of any

Family Court proceeding.

The issue is not, as the Plaintiff frames it in his Complaint, whether Judge Goldston acted

outside her authority.  The issue is not even whether her actions ran afoul of the Constitution.  The

issue is whether she ceased to act as a judge.  Otherwise, she is absolutely immune from civil

liability.  As addressed in this Memorandum, the actions alleged in the Complaint were taken during

the course of adjudicating a Family Court dispute.  Accordingly, even if the Plaintiff has alleged that

she acted improperly, he has not alleged that she was not acting in her capacity as a judge.

Accordingly, Judge Goldston is absolutely immune from Plaintiff's claims, and is entitled to

dismissal.

**B. This Court lacks subject matter jurisdiction over the Plaintiff's claims against Judge Goldston due to the application of the Eleventh Amendment to the United States Constitution.**

The Eleventh Amendment provides: "The judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.

Amend. XI.  It therefore preserves sovereign immunity of the states of the Union in federal court. It

is well settled that "this protection extends also to 'state agents and state instrumentalities' or stated

otherwise, to 'arms of the State' and State Officials." *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d

219, 222 (4th Cir. 2001) (quotations omitted). There can be no dispute that the West Virginia

Supreme Court of Appeals is an arm of the state, as it is a state agency, and its employee Judge

Goldston is a State Official.  As a result, Judge Goldston is entitled to Eleventh Amendment

protections.

Eleventh Amendment immunity functions as a bar to the exercise of subject matter jurisdiction.  As held by the U.S. Court of Appeals for the Fourth Circuit in *Roach v. West Va. Regional Jail & Correctional Facility Auth.*, 74 F.3d 46 (4th Cir. 1996), the Eleventh Amendment "limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities." *Roach* at 48; see also *Noe v. West Virginia*, No. 3:10-CV-38, 2010 U.S. Dist. LEXIS 76906, 2010 WL 3025561, *9-10 (N.D.W.Va. 2010) (Bailey, J.). ("In its motion, the State of West Virginia argues that this Court lacks subject matter jurisdiction insofar as the plaintiff seeks monetary damages in the amount of one billion dollars from the State. For the reasons that follow, this Court agrees."); *Republic of Paraguay v. Allen*, 949 F. Supp. 1269, 1271 (E.D.Va. 1996), *aff'd*, 134 F.3d 622 (4th Cir. 1998) ("The text of the amendment divests this Court of jurisdiction over actions against a state by "Citizens of another State or by Citizens or Subjects of any Foreign State."").  Because sovereign immunity can be waived only expressly in statute by the state, this defense can be raised at any time during litigation without being waived, even when raised for the first time on appeal.  See *Schlossberg v. Comptroller of Treasury (In re Creative Goldsmiths)*, 119 F.3d 1140 (4th Cir. 1997) (remanding case to the District Court with instruction for dismissal, due to the application of Eleventh Amendment immunity raised for the first time on appeal).

Being that this Defendant is entitled to Eleventh Amendment immunity, the only issue that remains is whether the facts or circumstances of this matter fall within a recognized exception to the Eleventh Amendment. Three narrow exceptions to the immunity enjoyed by the state and its instrumentalities pursuant to the Eleventh Amendment have been recognized, which are:

1.     **These Defendants have not waived their immunity nor consented to this suit.**

A state may waive its Eleventh Amendment immunity in a number of manners, such as by statute or consent to the jurisdiction. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). Such a waiver must be express. In other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 U.S. Dist. LEXIS 62041, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Va. Air Nat'l Guard*, No. 2:15-CV-11002, 2016 U.S. Dist. LEXIS 71165, 2016 WL 3094010, at *2-3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). With respect to statutory wavier, while West Virginia Code § 29-12-5(a) has been interpreted as constituting a waiver up to the limits of an applicable liability insurance policy, it has been held only to constitute a waiver of sovereign immunity for claims in *state court*, not federal court. *Westinghouse Elec. Corp. v. W.Va. Dept. of Highways*, 845 F.2d 468, 470-471 (4th Cir. 1988) ("[W. Va. Code §§ 29-12-5 and 33-6-14a] can, at most, be construed as waiving the state's immunity from suit in state court. Neither contains the "unequivocal" statement of the state's intention to subject itself to suit in federal court required by *Atascadero*, even assuming the legislature had the power under state law to do so."); see also *Noe v. West Virginia*, No. 3:10-CV-36, 2010 U.S. Dist. LEXIS 78808, at *10-11 (N.D. W.Va. Aug. 4, 2010) (Bailey, J.); *Regueno v. Erwin*, No. 2:13-CV-00815, 2013 U.S. Dist. LEXIS 62041, at *8-9 (S.D. W.Va. May 1, 2013). The Fourth Circuit even expressed doubt that the state legislature had the power to waive Eleventh Amendment immunity by statute, even if it so desired. *Westinghouse* at 470-471 (quoting W. Va. Const. art. VI, § 35 ("the State of West Virginia shall never be made defendant in any court of law or equity, . . . except [in any] garnishment or attachment

proceeding, as garnishee or suggestee.").

This interpretation has been consistent in the federal courts of West Virginia.  In *Wei-Ping Zeng v. Marshall University*, No. 3:17-cv-3008, 2018 U.S. Dist. LEXIS 46151 (S.D.W.Va. March 21, 2018) (Chambers, J.), a plaintiff sought to subvert sovereign immunity via waiver by asserting that the West Virginia Whistle Blower Law ("WVWBL"), W. Va. Code § 6C-1-1, *et seq*., authorized suits against the state.  See *Wei-Ping Zeng* at *23.  Acknowledging that this was true, the Court nonetheless held that, because Eleventh Amendment immunity is not waived unless the statute specifically authorizes suits in *federal* court, that statute also did not constitute a waiver of Eleventh Amendment immunity.  See *id*. at *23-24.  A general waiver, such as the one at issue in *Wei-Ping Zeng*, only permits suits against the state in *state* court.  See *id*.  The Plaintiffs have identified, and these Defendants are aware of, no explicit waiver of Eleventh Amendment immunity to suit in federal court potentially applicable to the claims asserted by the Plaintiffs.  As a result, this Defendant has not waived her Eleventh Amendment immunity by statute under the facts and circumstances of this matter.

With respect to consent, this argument equally fails. In general, if a state removes a matter to federal court, the state is deemed to have waived its Eleventh Amendment protections. See e.g. *Lapides v. Board of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). Here, however, the Plaintiffs initially filed this matter in federal court.  Thus, this Defendant has not waived her Eleventh Amendment immunity by consent.

## 2. Congress has not authorized suits of this type against the States.

To subvert Eleventh Amendment immunity via congressional authorization, as discussed in *College Savings Bank*, a plaintiff must show: "first, whether Congress has 'unequivocally expressed its intent to abrogate the immunity,' . . . and second, whether Congress has acted 'pursuant to a valid

exercise of power.'" *College Savings Bank* at 635 (quoting *Seminole Tribe of Fla v. Florida*, 517

U.S. 44, 55 (1996)).  Where Congress wishes to so authorize suits, they must do so explicitly and in

plain language, stemming from "a clear legislative statement." *Blatchford v. Native Village of*

*Noatak*, 501 U.S. 775, 786 (1991).

This principle evidences a recognition of the important policy purpose of the Eleventh

Amendment, and that the immunity it provides cannot be lightly abrogated.  In *Atascadero,* the

Supreme Court of the United States held that "[a] general authorization for suit in federal court is not

the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."

*Atascadero* at 238-239.  An example of such an authorization appears in the statute at issue in

*College Savings Bank*, the Patent and Plant Variety Protection Remedy Clarification Act.  This

authorization stated:

> Any State, any instrumentality of a State, and any officer or employee of a State or
> instrumentality of a State acting in his official capacity, shall not be immune, under
> the eleventh amendment of the Constitution of the United States or under any other
> doctrine of sovereign immunity, from suit in Federal court by any person . . . for
> infringement of a patent under section 271, or for any other violation under this title.

*College Savings Bank* at 632 (quoting 35 U.S.C. § 235(a)).

Plaintiff, who bears the burden of showing that subject matter jurisdiction in federal court

exists, have pointed to no act of Congress authorizing suits against the states for damages involving

the alleged *sua sponte* home inspections by family judges, or for a denial of attempts to video record

the same.  In fact, the U.S. Supreme Court has previously expressly held that 42 U.S.C. § 1983, upon

which the Plaintiff bases all of his claims, does not include a Congressional abrogation of Eleventh

Amendment immunity to suits against the states.  See *Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139,

59 L. Ed. 2d 358 (1979).  Accordingly, the exception to Eleventh Amendment immunity for

congressionally authorized suits is equally inapplicable.

**3.      This Defendant has not acted in violation of any federal law.**

Congressional authorization through § 5 of the Fourteenth Amendment, see *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 627, 636-637, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999), waiver, see e.g. *Palmer v. Ohio*, 248 U.S. 32, 39 S. Ct. 16, 63 L. Ed. 108 (1918), and solely prospective relief from a state official, see *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Because this matter is a claim for damages arising from past conduct, the exception recognized in *Ex Parte Young* does not apply.  See, e.g., *Al-Asbahi v. W. Va. Univ. Bd. of Governors*, No. 1:15-CV-144, 2017 U.S. Dist. LEXIS 12400, 2017 WL 402983, *26-*27 (N.D.W.Va. Jan. 30, 2017) (Keeley, J.), *aff'd* 724 Fed. Appx. 266 (4th Cir. 2018) (holding that the *Ex Parte Young* exception applies only where "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." (quoting *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998)); see also Complaint at *ad damnum* clause.

None of the above exceptions apply to the facts and circumstances of this matter and therefore this Defendant is shielded from liability of the allegations of Plaintiff's Complaint by the Eleventh Amendment's sovereign immunity.

## V.  CONCLUSION

**WHEREFORE**, based on the foregoing, this Defendant respectfully prays this Honorable Court GRANT her Motion to Dismiss with prejudice, and grant such other relief as the Court deems just and proper.

**Louise E. Goldston,**
**By Counsel,**

14

15

  /s/ Jennifer E. Tully
**Jennifer E. Tully (WV Bar #9356)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**astrider@baileywyant.com**

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

**MATTHEW GIBSON,**

    **Plaintiff,**

**v.**

                                   **Civil Action No. 5:21-cv-00181**
                                   **Honorable Frank W. Volk**

**LOUISE E. GOLDSTON, individually,**
**COUNTY COMMISSION OF RALEIGH**
**COUNTY, a political subdivision, JEFF**
**MCPEAKE, individually, BRIAN WHITE,**
**individually, BOBBY STUMP,**
**individually, KYLE LUSK, individually,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **"MEMORANDUM IN SUPPORT OF DEFENDANT LOUISE E. GOLDSTON'S MOTION TO DISMISS"** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, April 19, 2021:

J. Victor Flanagan
Kevin J. Robinson
Pullin Fowler Flanagan Brown & Poe, PLLC
901 Quarrier St
Charleston, WV  25301
*Attorney For: Brian White, Jeff McPeake, Bobby Stump,*
*County Commission of Raleigh County*

John H. Bryan
Law Office of John H. Bryan
PO Box 366
Union, WV  24983
*Attorney For: Matthew Gibson*

Arie M. Spitz
Kevin A. Nelson
Jason L. Holliday
Dinsmore & Shohl LLP
P.O. Box 11887
Charleston, WV 25339-1887
*Attorney For: Kyle Lusk*

  **/s/ Jennifer E. Tully**
**Jennifer E. Tully (WV Bar #9356)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**astrider@baileywyant.com**