**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**MATTHEW GIBSON,**

      **Plaintiff,**

**v.**                                **CIVIL ACTION NO.: 5:21-cv-00181**
                                            **HONORABLE FRANK W. VOLK**

**LOUISE E. GOLDSTON, individually,**
**COUNTY COMISSION OF RALEIGH**
**COUNTY, a political subdivision,**
**JEFF MCPEAKE, individually,**
**BRIAN WHITE, individually,**
**BOBBY STUMP, individually,**
**KYLE LUSK, individually,**

      **Defendants.**

**DEFENDANTS COUNTY COMMISSION OF RALEIGH COUNTY, JEFF MCPEAKE,**
**BRIAN WHITE, AND BOBBY STUMP'S MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**

NOW COME the Defendants, County Commission of Raleigh County, Jeff McPeake, Brian White, and Bobby Stump, by and through counsel, J. Victor Flanagan, Kevin J. Robinson and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC, and respectfully move this Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of their Motion, Defendants state as follows:

**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT**

Plaintiff, Matthew Gibson alleges that he was subjected to an unreasonable search and seizure by the Defendants. (See Plaintiff's Complaint, attached to the Motion to Dismiss as Exhibit A). Particularly, the Plaintiff alleges that over the past twenty years as a Family Court Judge, Defendant Goldston has been engaging in the practice of visiting homes of litigants appearing in

front of her. (*Id*. at ¶ 8).  Plaintiff avers that Defendant Goldston went to litigants' homes to either

determine if certain disputed marital property was present and/or to supervise the transfer of disputed

property.  (*Id*.).  Plaintiff further avers that Defendant Goldston admitted to conducting these home

visits in her capacity as a Family Court Judge on twelve separate occasions.  (*Id*.).

Plaintiff alleges that on September 18, 2020, the West Virginia Judicial Investigation

Commission filed a Formal Statement of Charges against Defendant Goldston following the

commission of one of the home visits at the home of Plaintiff, Matthew Gibson. (*Id*. at ¶ 9).  Plaintiff

also alleges that the Formal Statement of Charges alleged that probable cause existed to formally

charge Defendant Goldston with violations of the Code of Judicial Conduct and that formal

discipline was appropriate.  (*Id*.).

In addition, Plaintiff avers that on March 4, 2020, during a contempt hearing in the Plaintiff's

divorce case, Defendant Goldston, along with her Co-Defendants, entered the Plaintiff's home to

search and seize items of personal property which the Plaintiff was alleged to have failed to turn over

to his ex-wife following the finalization of his divorce more than one year earlier. (*Id*. at ¶ 10).

Plaintiff appeared before Judge Goldston on September 18, 2018, for the final hearing in his

divorce action. (*Id*. at ¶ 11).  Plaintiff's ex-wife was represented by Defendant Kyle Luck, Esq. (*Id*.).

The Court granted the divorce at the request of the parties, adopting a settlement agreement between

the parties.  (*Id*.).  Plaintiff further avers that the final order in the divorce action provides, in-part,

that "the parties divided their household furnishings by agreement which is represented by a four

page exhibit entered before the Court and attached hereto." (*Id*. at ¶ 12).  The final order further

provided that, "The circled items are Respondents" and "The items not circled are the Petitioners."

(*Id*.).

Furthermore, Plaintiff avers that contrary to the representations contained in the order itself, the original personal property disbursement agreement list document was not actually attached to the order, as it was represented to be verbally by the Court on record.  In the Investigative Panel Findings and Conclusions of the Lawyer Disciplinary Board in Complaint No. 20-05-104 against Defendant Kyle Lusk, in a footnote on page 15 of the said document, the Board noted that "The Court noted the original property form was not attached to the Order from the September 2018 hearing in the divorce." (*Id*. at ¶ 13).

Just over a year after the final divorce hearing, on or about, September 26, 2019, the Plaintiff's ex-wife, by Defendant Lusk, filed a Petition of Contempt against the Plaintiff, alleging that she did not receive all of the items of personal property from the original personal property disbursement list, or alternatively she alleged that the items received by the Plaintiff were allegedly damaged. (*Id*. at ¶ 14).  The ex-wife's petition, as drafted by Defendant Lusk, alleged that "many of the items had great sentimental value to the Petitioner" and that Mr. Gibson's actions "were carried out to inflict emotional harm and suffering to the Petitioner." (*Id*.).  Plaintiff further alleges that pursuant to the filing of the Petition for Contempt, Defendant Lusk submitted an altered property disbursement agreement list to the Court, as the original had not been attached to the final order.  (*Id*. at ¶ 15).  Plaintiff avers that the altered personal property agreement list submitted by Defendant Lusk contained numerous discrepancies with the original property list document introduced to the Court at the final hearing.  (*Id*.).

On March 4, 2020, the parities appeared before Judge Goldston for a hearing on the petition for contempt. (*Id*. at ¶ 16).  Plaintiff alleges that during the hearing, Judge Goldston suddenly and without explanation asked Mr. Gibson, who was representing himself *pro se*, for his home address.

(*Id*. at ¶ 16).  Plaintiff further alleges that Judge Goldston *sua sponte* stopped the hearing and ordered the parties to meet at Mr. Gibson's house in ten minutes.  (*Id*.).  Moreover, Plaintiff alleges that because she failed to explain the reason for the home visit, Mr. Gibson was unable to raise any objection while still at the hearing. (*Id*.).

Plaintiff avers that once everyone arrived at Mr. Gibson's home on March 4, 2020, and the purpose of the visit became clear, the Plaintiff moved to recuse Defendant Goldston on the grounds that she had become a potential witness in the case. (*Id*. at ¶ 19).  Judge Goldston denied the motion. (*Id*.).

Plaintiff avers that he then verbally refused to allow Defendant Goldston or anyone else in his house without a search warrant. (*Id*. at ¶ 20).  Plaintiff also avers that Defendant Goldston threatened to put Mr. Gibson in jail if he denied them entry into his house.  (*Id*.).  Plaintiff avers he had no choice but to relent.  (*Id*.).

Upon Judge Goldston's arrival to the property, Plaintiff alleges that he instructed a third party to video record the initial interactions outside the house between Defendant Goldston and the parties. (*Id*. at ¶ 21).  Plaintiff alleges he also recorded several minutes of audio of the initial interaction on his cell phone before being forced to turn it off. (*Id*.).

Plaintiff alleges that when the video and audio recordings were discovered by Defendant Goldston, she order both recordings stopped, following her threat of arrest and incarceration. (*Id*. at ¶ 22).  However, once inside the house, Defendant Goldston's bailiff, Defendant McPeake, used his personal phone to record both video and audio of the separation of marital assets.  (*Id*.).  Plaintiff avers that he was unware at the time that Defendant McPeake was recording video inside his home. (*Id*.).

4

Moreover, Plaintiff avers that he observed a phone in McPeake's hand at the time, but did not observe that he was recording. (*Id*.).   Plaintiff avers that McPeake recorded for a total of 7 minutes – though the total search lasted 20 to 30 minutes. (*Id*.).   Plaintiff also avers that McPeake never disclosed to the Plaintiff that he had been recording video in his home. (*Id*.).

Plaintiff alleges that McPeake provided the video to Defendant Judge Goldston, which she disclosed in the ensuing judicial disciplinary investigation. (*Id*.). Plaintiff also alleges that neither McPeake nor Goldston disclosed the existence of the video, nor provided a copy of the video, to the Plaintiff. (*Id*.).   Moreover, Plaintiff avers that McPeake did not enter the video into any investigative file with the Raleigh County Sheriff's office, his employer. (*Id*.).   Plaintiff also avers that none of the defendant deputies completed a report, nor any sort of documentation, of having been in Plaintiff's house and participated in a search and seizure on March 4, 2020. (*Id*.)

Plaintiff avers that after he was forced by Defendant Goldston to stop recording the incident, while standing in the front yard of his residence, Defendant Goldston stated, "Now are you gonna let me in, or am I gonna have to put you in jail!" (*Id*. at ¶ 23).   Plaintiff alleges at that point, Defendant McPeake signaled on his radio for law enforcement assistance and seized the Plaintiff's phone. (*Id*.)

Furthermore, Plaintiff alleges at no time did Plaintiff voluntarily consent to any defendant to enter his property, including his residence. (*Id*. at ¶ 26).   Also, Plaintiff alleges that at no time did he voluntarily grant consent to participate in Family Court proceedings outside the courtroom. (*Id*.).   Plaintiff avers that he did not grant consent to stop filming video and audio footage of the events which were transpiring on his property. (*Id*.).   Plaintiff avers that at no time did he voluntarily grant consent to the seizure of his phone. (*Id*.).   Moreover, Plaintiff avers that at no time did he grant consent to the seizure of items removed from the inside of his residence at the direction of Defendant

Goldston. (*Id.*).

Plaintiff avers that once inside his home, Judge Goldston directed the deputies to assist Plaintiff's ex-wife and Defendant Lusk in searching and seizing the home's contents. (*Id.* at ¶ 27). Plaintiff avers that the search lasted a total of 20 to 30 minutes. (*Id.*).

Plaintiff alleges that during the search, defendant police officers Stump and White arrived and entered Plaintiff's residence, after being called by Defendant McPeake. (*Id.* at ¶ 28). Plaintiff avers that they began to jointly participate in the search and seizure occurring inside Plaintiff's home. (*Id.*). In addition, Plaintiff alleges that shortly after arriving, Defendant Stump went back outside and instructed Plaintiff's witnesses to leave the property and Defendant Goldston allowed the Plaintiff's ex-wife's boyfriend, father, and brother to remain on Plaintiff's property without Plaintiff's consent. (*Id.*).

Plaintiff avers that many different items of personal property were taken out of Mr. Gibson's home during the search, some of which belonged to Mr. Gibson's children, as well as Mr. Gibson's significant other. (*Id.* at ¶ 29). Plaintiff also avers that some of the items which were taken were later returned but some items were never returned. (*Id.*). In addition, Plaintiff avers that none of the items were documented in writing by the Defendants. (*Id.*).

Moreover, Plaintiff alleges that following the search, there was no court order issued, establishing and describing what had occurred at Mr. Gibson's home, nor listing an inventory or description of the items which had been seized from inside his home. (*Id.*). Plaintiff alleges that Defendant Judge Goldston did recite for the record, following the search and seizure, what had been seized from Plaintiff's home, "to the best of her recollection." (*Id.*). Plaintiff avers that some of what she listed for the record were not items of personal property listed in the original property

6

disbursement list which was supposed to have been attached to the final order.  (*Id.*).

Finally, Plaintiff alleges six (6) counts for recovery in his Complaint: (1) Unreasonable Search and Seizure in violation of the Fourth Amendment (2) Violation of the First Amendment, (3) Monell claim against the RCC, (4) 14th Amendment Due Process, (5) 14th Amendment Equal Protection, and (6) Conspiracy with State Official.

## LEGAL STANDARD

Rule 12(b)(6) of the *Federal Rules of Civil Procedure* allows for a motion to dismiss to be granted to a defendant where a plaintiff has failed to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) should be granted when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him or her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46; 78 S.Ct. 9 (1957).  A motion to dismiss for failure to state a claim should generally be granted if "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Laboratories, Inc. v, Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need to detail factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); see also *Iqal*, -- U.S. --,--, 129 S.Ct.

at 1949 (stating that "the rule does call for sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face.").

## ARGUMENT OF LAW

I.       **Defendants Jeff McPeake, Brian White, and Bobby Stump are entitled to
         qualified immunity on all counts in the Plaintiff's Complaint.**

Section 1983 is not itself a source of substantive rights, but rather provides a method for

vindicating federal constitutional and statutory rights.  42 U.S.C. §1983; *Albright v. Oliver*, 510 U.S.

266, 271 (1994).  "A federal civil rights claim based upon § 1983 has two essential elements: '[A]

plaintiff must allege the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color of

State law.  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). Government officials are

entitled to qualified immunity as a matter of law so long as they have not violated "clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, courts ask "whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v.*

*Katz*, 533 U.S. 194, 202 (2001). Qualified immunity extends to government officials' objectively

reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (internal quotation marks omitted). "[T]he immunity inquiry must be filtered

through the lens of the officer's perceptions at the time of the incident in question." *Rowland*, 41

F.3d at 173.

Such a perspective serves two purposes. First, using the officer's perception of the facts at the

time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the "actual" facts, and allows them to focus instead on what the police officer reasonably perceived. In sum, the officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are. *Id.* (citations omitted). The qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law," and it "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Waterman* v. *Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citation and internal quotation marks omitted).

"It operates to ensure that before they are subject to suit, officers are on notice that their conduct is unlawful." *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). "[Q]ualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). "Hence, our qualified immunity defense involves a 'two-step' inquiry, asking 'first whether a constitutional violation occurred and second whether the right violated was clearly established.'" *Id.* at 188 (quotation omitted). "In analyzing whether the defendant has violated a constitutional right of the plaintiff, the court should identify the right 'at a high level of particularity.'" *Bland*, 730 F.3d at 391 (quotation omitted). "For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right 'must be sufficiently clear that a reasonable person would understand that what he is doing violates that right.'" *Id.* at 391 (Quotation omitted.).

"Police officers sued in their individual capacities… have qualified immunity with respect to

official actions taken in good faith." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982).
"Individual liability for actions in the performance of official duties arises only when an officer knew
or reasonably should have known that the action he took within the sphere of official responsibility
would violate the constitutional rights of the … individuals affected, or if he took the action with the
malicious intention to cause deprivation of constitutional rights or injury…" *Id*. at 406 (Quotation
omitted).  As the Fourth Circuit Court of Appeals has stated: "We *do not expect sheriffs to be judges*
and to have the training to sort through every intricacy of case law that is hardly a model of clarity."
*Bland v. Roberts*, 730 F.3d 368, 394 (4th Cir. 2013)(quotation omitted) (emphasis added).  "[P]olice
officers are not expected to parse code language as though they were participating in a law school
seminar."  *Id*. at 394.  Rather, in considering whether constitutional rights were clearly established
for qualified immunity purposes, [the Fourth Circuit Court of Appeals] views the issue from 'the
layman's perspective … recognizing that '[particularity with regard to legal conclusions, *lay officers
obviously cannot be expected to perform at the level achievable by those trained in the law.*'"  *Id*. at
394 (quotations omitted)(emphasis added).

The Plaintiff alleges in his Complaint that on March 4, 2020, during a contempt hearing in
the Plaintiff's divorce case, Defendant Goldston, along with her Co-Defendants, entered the
Plaintiff's home to search and seize items of personal property which the Plaintiff was alleged to
have failed to turn over to his ex-wife following the finalization of his divorce more than one year
earlier. (*Id*. at ¶ 10).

The alleged search and seizure happened during what the Defendants believed was a
continuation of a contempt hearing. Defendant McPeake, acting as bailiff for Defendant Judge
Goldston, went to the Plaintiff's residence.  Defendant McPeake had an objectively reasonable belief

that he could go to the Plaintiff's residence with the judge as she continued the contempt hearing. The qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law," and it "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Waterman* v. *Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citation and internal quotation marks omitted).

"A bailiff is an officer of the court to which he or she is assigned, subject to its control and supervision, and responsible for preserving order and decorum, taking charge of the jury, guarding prisoners, and other services which are reasonably necessary for the court's proper functioning." Syllabus Point 2, *In re Pauley* 173 W.Va. 228, 314 S.E.2d 391 (1983).   As such, Defendant McPeake's presence with the judge was reasonable under the circumstances.

Furthermore, the Plaintiff failed to properly plead that Defendant McPeake actually seized any of the property in the Plaintiff's residence.  In fact, the Plaintiff has only pled that Defendant McPeake seized the Plaintiff's cell phone.

Defendant Goldston did not want the Plaintiff to record the contempt hearing, so Defendant McPeake seized the Plaintiff's cell phone just as he would have had they been in court. As such, Defendant McPeake is entitled to qualified immunity.

The Plaintiff has also failed to property plead any facts indicating that Defendants White and Stump actually took part in an unlawful search and seizure of the Plaintiff's property.  Defendants Stump and White simply responded to a call for back up when they responded to the Plaintiff's residence. (*Id*. at ¶ 28). Responding to a call for back up is in their official duties as police officers. The Plaintiff has also failed to plead that Defendants White and Stump actually seized any of the Plaintiff's property themselves.  The Plaintiff also failed to properly plead that these Defendants

removed any of the Plaintiff's property and stored it as evidence at the Raleigh Sheriff's Department. The Plaintiff also failed to properly plead or point to any case law or statute indicating the officers were required to file a report about their presence at the Plaintiff's residence. All of the acts performed by Defendants White and Stump were reasonable under the circumstances. As such, Defendants White and Stump are also entitled to qualified immunity.

II.     **Plaintiff's Complaint for Violation of the First Amendment against Defendants McPeake, Stump, and White does not meet the pleading standards of *Twombly* and *Iqbal*.**

In Count II of the Plaintiff's Complaint, Plaintiff alleges that he engaged in protected First Amendment speech and activity when he began to video and audio record the defendants on his property engaging in the alleged search and seizure on March 4, 2020, both through audio recording device on his person, as well as through video being filmed at his direction on his private property with the assistance of the third-party bystander at his home. (See Plaintiff's Complaint at ¶ 64).

a.      **The Plaintiff has failed to properly plead that Defendants White and Stump seized his cell phone.**

The Plaintiff has not properly pled that Defendants White and Stump are liable for a first amendment violation as pled in Count II. For instance, Defendants White and Stump were not at the residence when the Plaintiff's cell phone was seized. The Plaintiff alleged in his Complaint that Deputy McPeake signaled on his radio for law enforcement assistance and seized Plaintiff's phone. (*Id*. at¶ 23). As one can analyze from the Plaintiff's Complaint, neither Defendants White nor Stump were present at the home when the Plaintiff's cell phone was allegedly seized. As such, Count II of the Plaintiff's Complaint should be dismissed against Defendants White and Stump.

12

**b.**       **Defendant McPeake was acting on an order from Defendant Goldston.**

As stated before, acting as bailiff for Defendant Judge Goldston, Defendant McPeake went

to the Plaintiff's residence with Judge Goldston after she stopped a contempt hearing to go to the

Plaintiff's residence.  Defendant Goldston did not want the Plaintiff to record the contempt hearing,

so Defendant McPeake seized his phone just as he would have had they been in court. Defendant

McPeake had an objectively reasonable belief that he could seize the Plaintiff's cell phone as the

judge continued the contempt hearing.  As such, the Plaintiff has failed to properly plead a claim for

Violation of the First Amendment against Defendant McPeake and Count II of the Plaintiff's

Complaint should be dismissed.

**III.       Defendant Raleigh County Commission has qualified immunity for any 42
             U.S.C. §1983 claims against it as the Plaintiff has failed to meet the pleading
             standards of *Twombly* and *Iqbal*.**

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other

words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 691 (U.S. 1978).  Local government therefore may not be sued

under 1983 solely on a respondeat theory, but rather only when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts injury for which the government as an entity is responsible under §

1983.  *Id*. at 694; See also *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. W.Va.

1999)(holding plaintiffs seeking to impose liability on a municipality must adequately plead and

prove existence of an official policy or custom that is fairly attributed to the municipality and that

proximately caused the deprivation of their civil rights).   "Proof of a single incident of

unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the

incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (U.S. 1985); See also *Semple*, F.3d at 713-14 (proof of single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom).

In this case, the Plaintiff has not sufficiently pled what policy or custom of the Raleigh County Commission is attributable to the Plaintiff's injuries. The Plaintiff has failed to plead any facts which would indicate that it was the Raleigh County Commission's policy or custom to assist Defendant Goldston in visiting litigants' homes.

The Plaintiff alleges in his Complaint that is was Judge Goldston who had been engaging in the practice of visiting homes of litigants appearing in front of her. (See Plaintiff's Complaint at ¶ 8). Any bailiff who would have gone along with Judge Goldston would have gone along with her pursuant to his or her statutory duties. West Virginia state law establishes the duty of the sheriff to provide bailiff services to judges within the state of West Virginia. See W.Va. Code § 51-3-5. As such, the bailiff must be with the judge at all times.

Municipal entities cannot be held liable under section 1983 solely because they employed a tortfeasor. Rather, when a municipal entity is sued-directly or in an official-capacity suit-the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L. Ed. 626 (1997); *Hafer*, 502 U.S. at 25 (1991); *Graham*, 473 U.S. at 166; *Monell*, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978); *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016); *Santos*, 725 F.3d at 469-70; *Carter v. Morris*, 164 F.3d 215, 218-19 (4th Cir. 1999). A violation results from a municipal entity's "policy or custom" if the violation

resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690-91, 694; see *St. Louis v. Praprontnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L. Ed. 2d 107 (188).

Not every municipal official's action or inaction represents municipal policy. Rather, the inquiry focuses on whether the municipal official possessed final policy making authority under state law concerning the action or inaction. See, e.g. *McMillian v. Monroe Cty.*, 520 U.S. 781, 785-86, 117 S.Ct. 1734, 138 L. Ed. 2d 1 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L. Ed. 2d 452 (1986); *Riddick v. Sch.Bd.*, 238 F.3d 518, 523 (4th Cir. 2000). Furthermore, even if a section 1983 plaintiff can identify the requisite final policy making authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." *Riddick*, 238 F.3d at 524. Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404.

The Plaintiff has failed to plead that the Raleigh County Commission was the driving force behind any policy or custom to visit litigants' homes during family court proceedings in Raleigh County. The Plaintiff also failed to point to any statement, ordinance, regulation, or decision officially adopted by the Raleigh County Commission that led to a violation of the Plaintiff's rights. As such, Plaintiff's Complaint amounts to little more than "labels and conclusions" which are insufficient to plead a cause of action against the Raleigh County Commission. There is no specific mention of facts that in any way show that Defendant Raleigh County Commission could plausibly be liable. The allegations in the Complaint are the definition of "naked assertions" of wrongdoing that the holdings in *Twombly* and *Iqbal* seek to prevent. *Twombly*, 550 U.S. at 557. Given this, all

of the Plaintiff's claims against Defendant Raleigh County Commission should be dismissed.

IV.     **Plaintiff's Complaint does not meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure as delineated in *Twombly* and *Iqbal* and fails to assert any factual content that would result in reasonable inference that the Defendants are liable for a violation of the 14th Amendment as alleged in Counts IV and V of the Complaint.**

The Plaintiff's Complaint does not allege any specific acts or facts regarding the Defendants McPeake, Stump, and White's connection to the alleged injuries sustained by the Plaintiff as alleged in Counts IV and V of the Plaintiff's Complaint. Plaintiff fails to adequately state a claim upon which relief can be granted under the standards of Rule 8 of the Federal Rules of Civil Procedure and as delineated in *Iqbal* and *Twombly*. The only possible mention of these Defendants in Counts IV and V is when the Plaintiff alleges "[n]o objectively reasonable government official or law enforcement officer would have a reason to believe that they possessed  authority to engage in the events occurring on the Plaintiff's property on March 4, 2020, including the Fourteenth Amendment violations which occurred therein." (See Plaintiff's Complaint at ¶ 88 and ¶ 100).

This amounts to little more than "labels and conclusions" which are insufficient to plead a cause of action.  The allegations in the Complaint are the definition of "naked assertions" of wrongdoing that the holdings in *Twombly* and *Iqbal* seek to prevent.  *Twombly*, 550 U.S. at 557. Given this, all of the Plaintiff's claims against Defendants in Counts IV and V should be dismissed.

### **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, these Defendants requests that this Honorable Court grant their Motion to Dismiss with prejudice and grant Defendants any other and further relief which the Court deems appropriate.

COUNTY COMMISSION OF RALEIGH COUNTY, JEFF McPEAKE, BRIAN WHITE, and BOBBY STUMP,

By Counsel,


/s/ Kevin J. Robinson
J. Victor Flanagan, WV State Bar No. 5254
vflanagan@pffwv.com
Kevin J. Robinson, WV State Bar No. 10181
krobinson@pffwv.com


***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
252 George Street
Beckley, WV  25801
Telephone:      (304) 254-9300
Facsimile:      (304) 255-5519

17

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

        Plaintiff,

v.                                         **CIVIL ACTION NO.: 5:21-cv-00181**
                                         **HONORABLE FRANK W. VOLK**

LOUISE E. GOLDSTON, individually,
COUNTY COMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

        Defendants.

## CERTIFICATE OF SERVICE

    The undersigned, counsel of record for Defendants County Commission of Raleigh County, Jeff McPeake, Brian White, and Bobby Stump, does hereby certify on this 19th day of April, 2021, that a true copy of the foregoing "**DEFENDANTS COUNTY COMMISSION OF RALEIGH COUNTY, JEFF MCPEAKE, BRIAN WHITE, AND BOBBY STUMP'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**" was served upon opposing counsel through the Court's CM/ECF filing system as follows:

John H. Bryan, Esquire
Law Office of John H. Bryan
611 Main St.
P.O. Box 366
Union, WV 24983
jhb@johnbryanlaw.com

*Counsel for Plaintiff*

Jennifer E. Tully, Esquire
Adam K. Strider, Esquire
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
P. O. Box 3710
Charleston, WV 25337-3710
jtully@baileywvant.com
astrider@baileywvant.com
*Counsel for Defendant Louise E. Goldston*

Arie M. Spitz, Esquire
Kevin A. nelson, Esquire
Jason L. Holliday
Dinsmore & Shohl, LLP
P. O. Box 11887
Charleston, WV 25339-1887
*arie.spitz@dinsmore.com*
*kevin.nelson@dinsmore.com*
*jason.holliday@dinsmore.com*

/s/ Kevin J. Robinson
J. Victor Flanagan, WV State Bar No. 5254
vflanagan@pffwv.com
Kevin J. Robinson, WV State Bar No. 10181
krobinson@pffwv.com

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
252 George Street
Beckley, WV  25801
Telephone:      (304) 254-9300
Facsimile:      (304) 255-5519