IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**MATTHEW GIBSON,**

      **Plaintiff,**

**v.**                                                                            **Civil Action No. 5:21-CV-00181**

**LOUISE E. GOLDSTON, individually,**
**COUNTY COMMISSION OF RALEIGH**
**COUNTY, a political subdivision,**
**JEFF MCPEAKE, individually,**
**BRIAN WHITE, individually,**
**BOBBY STUMP, individually,**
**KYLE LUSK, individually,**

      **Defendants.**

### DEFENDANT KYLE LUSK'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION TO DISMISS

In support of his Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) of the *Federal Rules of Civil Procedure*, Defendant Kyle Lusk ("Defendant" or "Mr. Lusk") submits the following memorandum. In sum, Defendant maintains that Plaintiff Matthew Gibson ("Plaintiff" or "Mr. Gibson") failed to serve a Summons with the Complaint and Mr. Gibson's Complaint fails to state a claim upon which relief can be granted because the factual allegations against Mr. Lusk fail to show he was acting under the color of state law, and, additionally, he has absolute immunity for the alleged acts based on the common law litigation privilege.

### SUMMARY OF THE ALLEGATIONS

The Complaint is brought pursuant to 42 U.S.C. §1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, arising from the visit to Mr. Gibson's home ordered by 13th Family Circuit Court Judge, Defendant Louise E. Goldston ("Judge Goldston"), related to the divorce matter between Mr. Gibson and his ex-wife, who is represented

by Mr. Lusk. [*See generally* Doc. 1]. Mr. Gibson generally alleges that the home visit amounted to an unreasonable search and seizure and that he and his "significant other" were improperly restricted from video and/or audio recording the home visit. [Doc. 1]. Specific to Mr. Lusk, the Complaint brings a single count of conspiracy, alleging that Mr. Lusk "agreed with and/or engaged in concerted action with, Defendant Goldston to participate in a conspiracy with Goldston to do an act that deprived Plaintiff of his federally protected rights." [Doc. 1, ¶104].

According to the Complaint, on March 4, 2020, Judge Goldston held a hearing on Mr. Gibson's ex-wife's Petition for Contempt against Mr. Gibson for his alleged failure to relinquish certain items from a personal property disbursement list or delivering damaged items. [Doc. 1, ¶¶11, 14]. Mr. Gibson alleges that "Judge Goldston *sua sponte* stopped the hearing and ordered the parties to meet at Mr. Gibson's house in ten minutes." [Doc. 1, ¶16]. The Complaint further contains allegations that when Plaintiff refused to allow anyone into his home without a warrant, Judge Goldston threatened to put him in jail. [Doc. 1, ¶20]. Mr. Gibson and his significant other thereafter began to record the interactions outside the residence, and "[w]hen the video and audio recording were discovered by Defendant Goldston, she ordered both recordings stopped, following her threat of arrest and incarceration." [Doc. 1, ¶22]. Mr. Gibson was allegedly threatened "with incarceration approximately seven times" by Judge Goldston, as was his significant other "if she did not turn off the camera." [Doc. 1, ¶24]. Eventually, Defendant McPeake seized Gibson's phone. [Doc. 1, ¶25].

For his part, Mr. Lusk allegedly "advised Judge Goldston," during the home visit ordered by the judge, "that the third party who had been recording for the Plaintiff still had the phone in her hand - implying that she was still recording." [Doc. 1, ¶25]. Mr. Gibson also alleges Mr. Lusk advised Judge Goldston that "he didn't think Plaintiff's phone was off . . ." [*Id.*]. Significantly,

Plaintiff does not allege in his Complaint that Mr. Lusk ordered Mr. Gibson or his significant other to stop recording the proceedings, nor does he allege that Mr. Lusk made any attempt to seize the recording devises.

Plaintiff further alleges in his Complaint that in September 2018, prior to the subject home visit, Mr. Lusk allegedly advised Mr. Gibson's then-attorney that Judge Goldston "is big on" ordering home visits, which Mr. Gibson characterizes as a "threat". [Doc. 1, ¶17]. Contrary to his allegation that the home visit was ordered by the judge "*sua sponte*," [Doc. 1, ¶102], Mr. Gibson speculates that Mr. Lusk and Judge Goldston had a "private *ex parte* agreement" to perform a "search and seizure" at his home (i.e., the home visit). [Doc. 1, ¶102]. The sole bases for this conclusion is the alleged "threat" made more than a year and a half prior to the home visit and an alleged claim by an unidentified third-party that Lusk had "pushed" another judge for a home visit in a separate, unrelated divorce proceeding.

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss may be based upon the insufficiency of service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 4(c)(1) provides that the plaintiff is responsible for serving a summons, together with a copy of the complaint, within the time requirements set forth under Rule 4(m). Rule 4(m), in turn, states that a plaintiff has a 120-day period after the filing of the complaint to effect service.

"Rule 12(b)(6) permits the district court to dismiss a complaint that fails to state a claim upon which relief may be granted." *Chafin v. Western Reg'l Jail*, No. 3:13-cv-01706, 2013 U.S. Dist. LEXIS 99855, *5 (Jun. 12, 2013). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Republican Party v. Martin,* 980 F.2d 943, 952

(4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548-555, 127 S. Ct. 1955, 1960-65, 167 L. Ed. 2d 929 (2008). The court, however, "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.,* 213 F.3d 175, 180 (4th Cir. 2000). Mr. Lusk submits that the Complaint should be dismissed against him because he is not a person subject to suit under § 1983 and is otherwise immune from claims alleged against him based on the common law litigation privilege.

## LAW AND ARGUMENT

### A.    Mr. Lusk Was Not Served With The Summons.

As a threshold matter, Mr. Lusk moves for dismissal, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, for insufficient service of process. Mr. Gibson's efforts to serve Mr. Lusk with a copy of the complaint *and summons* do not comport with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Pursuant to Rule 4, a plaintiff must properly and timely serve a defendant with both a summons and a copy of the complaint or request that the defendant waive service. Mr. Lusk was not asked to waive service and, while he was served a copy of the Complaint, he was not served with the summons as required by Rule 4. *See* Affidavit of Kyle Lusk, attached as Exhibit A; Copy of Documents Served, attached as Exhibit B. Accordingly, Mr. Lusk maintains that his motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure should be granted.

**B.      The Complaint Fails to State a Claim Under §1983 Because Mr. Lusk Was Neither a State Actor Nor Acting "Under The Color of State Law."**

Mr. Gibson's conspiracy claims against Mr. Lusk are grounded on the latter's alleged conduct related to the March 4, 2020 home visit. In essence, Plaintiff contends that Mr. Lusk was acting "under the color of state law" merely by participating in the home visit and in notifying the Judge that Mr. Gibson and a third party were recording the visit after the Judge had ordered them not to. Because the alleged acts by Mr. Lusk were solely for the purpose of advocating for his client, however, he submits that Mr. Gibson's claims under §1983 should be dismissed.

Under 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2021). In order to state a claim against Mr. Lusk pursuant to §1983, Mr. Gibson must satisfy two elements: (1) that Mr. Lusk was acting under color of state law at the time the complained-of act was committed; and (2) that Mr. Lusk's conduct deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L. Ed. 2d 420, (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Winter v. Administrator, Douglas County Memorial Hosp.*, 2007 U.S. Dist. LEXIS 34669, 2007 WL 1430500 at *1 (N.D. Ga. 2007) (*citing Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995)). That the defendant act under color of state law is "a jurisdictional requisite for a §1983 action." *West v. Atkins*, 487 U.S. 42, 46, 108 S.Ct. 2250, 101 L. Ed. 2d 40 (1988)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). As a general rule, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 73 L. Ed. 2d 482, 102 S. Ct. 2744, n.18  (1982) ("state employment is generally sufficient to render the defendant a state actor"); *but see Polk County v. Dodson*, 454 U.S. 312, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981) (holding that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding). The "under color of state law" requirement has a greater impact where the defendant is a private party not employed by the state.

Generally, private actors are not acting under color of state law. See *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). In order to determine whether a private actor acts under color of law for §1983 purposes, the Court looks to whether the conduct causing the alleged deprivation of federal rights is fairly attributable to the State. *Id.* (*citing Lugar*, 457 U.S. at 937). Conduct may be fairly attributable to the State where (1) it results from a governmental policy and (2) the defendant is someone who fairly may be said to be a governmental actor. *Lugar*, 457 U.S. at 937; *see also Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 839 (9th Cir. 1999).  As this Court has recently found:

> Overwhelmingly, courts, including the Supreme Court, have found that "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Ct. v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (collecting cases); *see also Hall v. Quillen*, 631 F.2d 1154, 1155 (4th Cir. 1980) (finding that "it is a question that other circuit courts, with complete unanimity, have answered by declaring unequivocally that there is a lack of state

action in such a situation, and, consequently, no liability under § 1983"); *see also Galloway v. Gainer*, No. 2:17-cv-58, 2017 U.S. Dist. LEXIS 101986, 2017 WL 2825932, at *2 (N.D. W. Va. June 30, 2017) ("Private attorneys and public defenders do not act under color of state law by being part of the state judicial system or being paid by a state agency."); *Marcantoni v. Bealefeld*, 734 F. App'x 198, 199 (2018) ("[P]rivate attorneys do not act under color of state law and a § 1983 suit may not be maintained against an attorney based on his representation.").

*Loved Ones in Home Care, LLC v. Toor*, No. 2:19-cv-00134, 2019 U.S. Dist. LEXIS 107582, *6-7 (S.D.W. Va. Jun. 27, 2019).

Mr. Gibson has failed to set forth sufficient facts against Mr. Lusk to state a civil rights cause of action under 42 U.S.C. §1983 because his claims against Mr. Lusk are solely based on Mr. Lusk's representation of his ex-wife in judicial proceedings. Plaintiff recognizes in his Complaint that Mr. Lusk is not a state actor. [Doc. 1, ¶103]. The Complaint also contains the acknowledgment that Mr. Lusk had represented Mr. Gibson's ex-wife in their divorce action and was representing his ex-wife in the related Petition for Contempt which resulted in the subject home visit. [Doc. 1, ¶¶11, 14]. Mr. Lusk's alleged participation in the search of Mr. Gibson's residence—*ordered by the Judge*—was performed in furtherance of his client's interests, not those of the State. Indeed, Mr. Gibson admits in his Complaint that the home visit was ordered "*sua sponte*" by the Judge. [Doc. 1, ¶16]. Even taking as true Mr. Gibson's baseless allegation that Judge Goldston and Mr. Lusk had a private *ex parte* agreement to conduct home visits to the advantage of Mr. Lusk's clients, such actions alone would not transform Mr. Lusk into a state actor subject to a civil complaint under § 1983.

The Fourth Circuit has instructed time and again that "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it into state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient" to

constitute state action. *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999)). Furthermore, "merely private conduct, no matter how discriminatory or wrongful" fails to qualify as state action. *See Mentavlos*, 249 F.3d at 301 (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)). Contrary to the Plaintiff's legal conclusions contained in his Complaint, [*see* Doc. 1, ¶104], Mr. Lusk was clearly not "acting under color of state law" by participating in the home visit.

Similarly, the alleged wrongful acts of Mr. Lusk in advising Judge Goldston that Mr. Gibson and his significant other were recording in violation of her order cannot reasonably be said to constitute actions "under color of state law." The Complaint does not allege that Mr. Lusk seized Mr. Gibson or his significant other's recording devices, nor does it allege Mr. Lusk ordered them to stop recording. Characterizing the act of notifying a Judge that someone is violating the Judge's order as being under color of state law would convert countless acts by attorneys representing private clients from mere, appropriate representation into a state action. Such a result is clearly contrary to federal law. Accordingly, Defendant maintains that Mr. Gibson's claims against Mr. Lusk under §1983 should be dismissed for failure to state a claim upon which relief can be granted.

### C. The Claims Against Mr. Lusk Are Barred Under The Litigation Privilege Because The Conduct Alleged Was Directly Related to a Judicial Proceeding.

Because Mr. Lusk's alleged conduct was, at all times, related to his role as advocate for his client, he believes that the litigation privilege serves as an absolute bar against Mr. Gibson's conspiracy claims. Typically, the litigation privilege has been invoked by attorneys to safeguard them from defamation suits arising from comments made in the course of judicial proceedings. Courts, however, have extended the litigation privilege to cover unconventional and sometimes

novel causes of action against attorneys acting within the judicial process. "As one scholar put it, as new tort theories have emerged, courts have not hesitated to expand the privilege to cover theories, actions, and circumstances never contemplated by those who formulated the rule in medieval England." T. Leigh Anenson, *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers,* 31 Pepp. L. Rev. 915, 928 (2004) (internal quotation marks omitted). In many jurisdictions, "[t]he spectrum of legal theories to which the privilege has been applied includes negligence, breach of confidentiality, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, [and] fraud." *Id.* at 927-28 (footnotes omitted).

In civil rights actions filed under 42 U.S.C. § 1983, federal courts,[1] including the United States Supreme Court and the Fourth and Second Circuit Courts of Appeals, have recognized absolute immunity for government attorneys; *see, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 422–424, 96 S. Ct. 984, 991–992, 47 L. Ed. 2d 128, 139–140 (1976); *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018); *Barrett v. United States*, 798 F.2d 565, 571-73 (2nd Cir. 1986); and for "virtually all acts, regardless of motivation, associated with [a federal prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). Federal decisions addressing the immunity of government attorneys and prosecutors acting as officers of the court in § 1983 actions are relevant to the common-law claim in this state action because, as the United States Supreme Court explained in *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983), the litigation privilege at common law protected *all* participants in the court system, and private attorneys were treated no differently from judges, government lawyers

---

[1] State courts have similarly found the litigation privilege applies to federal claims under 42 U.S.C. §1983.  *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 889 A.2d 426, 434-37 (N.J. 2006) (holding that the common law privilege is applicable even to a federal claim under § 1983).

and witnesses. *See id.*, 334-35. "[A]ll persons—governmental or *otherwise*—who were integral parts of the judicial process" were afforded absolute immunity from liability because of the need to ensure "that judges, *advocates*, and witnesses can perform their respective functions without harassment or intimidation." *Id.*, 335, quoting *Butz v. Economou*, 438 U.S. 478, 512, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (emphasis added; internal quotation marks omitted); *see also Loigman v. Township Committee*, 185 N.J. 566, 582-83, 889 A.2d 426 (2006) ("Like judicial, prosecutorial, and witness immunity, the litigation privilege is essential for the proper functioning of our criminal and civil justice systems and is not at odds with the history and purposes of [42 U.S.C.] § 1983. At common law, the litigation privilege blanketed all participants in the court system; private attorneys were treated no differently [from] judges, government lawyers, and witnesses.").

For example, in *United States General, Inc. v. Schroeder,* the federal district court found that "as a general proposition, attorneys are held to be immune from civil liability under 42 *U.S.C.* § 1983" for conduct related to the judicial process. 400 F. Supp. 713, 717 (E.D.Wis. 1975). The court explained that the immunity "is grounded upon critical social considerations, for, if an attorney must work in constant fear of civil liability, it is the rights of the public that will suffer." *Id.* In *Walden v. Wishengrad,* the United States District Court both recognized and applied the litigation privilege in a § 1983 wrongful arrest case. 573 F. Supp. 1115, 1117 (W.D.N.Y.1983), *aff'd,* 745 F.2d 149 (2d Cir.1984). In that matter, the court conferred absolute immunity on a county social services department attorney for allegedly inducing a family court judge to issue a warrant for the plaintiff's arrest for failure to appear in court. *Id.* at 1116. The federal district court concluded that the social services attorney was "no less an integral part of the judicial process"

than judges, prosecutors, and witnesses, to whom immunity has been extended in §1983 cases. *Id.* at 1117 (internal quotation marks omitted).

Mr. Lusk, therefore, asserts that he is immune from Plaintiff's claims under the common law litigation privilege. His alleged conduct was inextricably tied to a judicial proceeding given that this home visit was "*sua sponte*" ordered by the Judge during a hearing on Mr. Lusk's client's Petition for Contempt. Taking all of the Complaint's factual allegations as true, any actions carried out by Mr. Lusk were conducted solely in his role as an advocate for his client. As a result, he submits that the claims against him should therefore be dismissed with prejudice.

Moreover, the Petition for Contempt action is still ongoing.  *See* Exhibit A.  And Mr. Lusk is still counsel for Mr. Gibson's ex-wife in that matter.  *See* Exhibit A.  Allowing this suit to go forward against Mr. Lusk would improperly interfere with his ability to zealously represent his client in that matter. Such an improper collateral attack is exactly the sort of maneuvering the litigation privilege is designed to prevent.  Mr. Gibson should not be permitted to seek an advantage in the ongoing Petition for Contempt by attacking his ex-wife's lawyer, Mr. Lusk, via filing a separate civil action alleging that Mr. Lusk's conduct in the Petition for Contempt matter is improper.  *See Schroeder,* 400 F. Supp. 713, 717.  The claims against Mr. Lusk, he maintains, should therefore be dismissed.

<u>CONCLUSION</u>

For the reasons set forth above, Mr. Gibson failed to sufficiently serve process in accordance with rules by failing to provide Mr. Lusk with the summons. Moreover, the Complaint fails to state any claim upon which relief may be granted because Mr. Lusk was not a state actor and was not acting under color of state law and because Mr. Lusk is immune from suit pursuant to the litigation privilege. Defendant Kyle Lusk, therefore, requests that this Court enter an Order

that (1) grants this Motion; (2) dismisses the Complaint with prejudice; and (3) awards it any additional relief the Court finds appropriate.

**KYLE LUSK,**

**By Counsel,**

/s/ Arie M. Spitz
Arie M. Spitz (WVSB # 10867)
Kevin A. Nelson (WVSB# 2705)
Jason L. Holliday (WVSB # 12749)
DINSMORE & SHOHL LLP
707 Virginia Street, East, Suite 1300
P.O. Box 11887
Charleston, West Virginia 25339-1887
Telephone: (304) 357-0900
Facsimile: (304) 357-0919
arie.spitz@dinsmore.com
kevin.nelson@dinsmore.com
jason.holliday@dinsmore.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**MATTHEW GIBSON,**

     **Plaintiff,**

**v.**                                            **Civil Action No. 5:21-CV-00181**

**LOUISE E. GOLDSTON, individually,**
**COUNTY COMMISSION OF RALEIGH**
**COUNTY, a political subdivision,**
**JEFF MCPEAKE, individually,**
**BRIAN WHITE, individually,**
**BOBBY STUMP, individually,**
**KYLE LUSK, individually,**

     **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

     I, Arie M. Spitz, counsel for Defendant Kyle Lusk, do hereby certify that I have filed a true

copy of the foregoing ***Defendant Kyle Lusk's Memorandum of Law in Support of His Motion to***

***Dismiss*** this 19th day of April 2021 with the Clerk of the Court using the CM/ECF filing system,

which will send notification of such filing to the below listed CM/ECF participants:

John H. Bryan
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
*Counsel for Plaintiff*

J. Victor Flanagan
Kevin J. Robinson
PULLIN FOWLER FLANAGAN BROWN & POE
252 George Street
Beckley, WV 25801
*Counsel for Defendants*
*County Commission of Raleigh County, Jeff McPeake,*
*Brian White and Bobby Stump*

/s/ Arie M. Spitz
Arie M. Spitz (WVSB # 10867)