## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

MATTHEW GIBSON,

       Plaintiff,

vs.                             Civil Action No. 5:21-cv-00181
                                 Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

       Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT
## LOUISE E. GOLDSTON'S MOTION TO DISMISS

Now comes the Plaintiff, by and through counsel, John H. Bryan, pursuant to Rule 12(b)

(6) of the Federal Rules of Civil Procedure, and moves the Court to deny Defendant Louise E.

Goldston's motion to dismiss.  In support hereof, the Plaintiff states as follows:

### INTRODUCTION

This case arises from actions taken by Defendant Goldston on March 4, 2020 at the

Plaintiff's home, wherein she personally directed, and participated in, a search and seizure of the

Plaintiff, his home, and personal possessions, under the auspices of holding a Family Court

contempt hearing at the Plaintiff's residence.

FACTS ALLEGED IN THE COMPLAINT

Plaintiff's divorce action was litigated in the Family Court of Raleigh County, West Virginia, which is the 13th Family Court Circuit. Defendant Louise E. Goldston was the presiding Family Court judge. The divorce was finalized at a final hearing on September 18, 2018. During the final hearing, Plaintiff's ex-wife was represented by Defendant Kyle Lusk, who threatened during the hearing to bring Defendant Goldston to Plaintiff's home and search the home for items of personal property sought by Mr. Lusk's client. An agreement pertaining to disputed personal property was reached, with a document being submitted to the Court memorializing and describing the agreement. The agreement was supposed to have been attached to the final order, but was not attached to the final order.

Approximately a year and a half later, Mr. Lusk filed a petition for contempt on behalf of Plaintiff's ex-wife, claiming that she didn't receive all of the items of personal property. Plaintiff was now acting *pro se*. Mr. Lusk called the Plaintiff the night prior to the scheduled hearing at the Family Court of Raleigh County, which was to be held before Defendant Goldston. Lusk left a voicemail claiming that Judge Goldston had asked him to convey his settlement proposal, which was a demand for $5,000.00, "[o]therwise, we'll see you tomorrow." Plaintiff arrived at the hearing *pro se* to defend against the contempt allegations.

At the hearing, prior to any finding of contempt, Defendant Goldston stopped the hearing, acting sua sponte, suddenly and without explanation asked Mr. Gibson for his home address and ordered the parties to meet at Mr. Gibson's house in ten minutes. She failed to explain the reason for the parties traveling to Plaintiff's home. He was unable to raise an objection while still at the hearing. Once everyone arrived at Mr. Gibson's home on March 4, 2020, and the purpose of the

2

visit became clear, the Plaintiff moved to recuse Defendant Goldston on the grounds that she had

become a potential witness in the case. Judge Goldston denied the motion as untimely. Plaintiff

then verbally refused to allow Defendant Goldston or anyone else in his house without a search

warrant. Defendant Goldston threatened to put Mr. Gibson in jail if he denied them entry into his

house. Defendant Goldston threatened to jail the Plaintiff six times while on his property that

day.

Plaintiff video and audio recorded the initial few minutes of the interactions on his

property, including the portion where Plaintiff's motion for recusal was denied, as well as

Plaintiff stating that nobody was going in his house without a search warrant. The video captured

Defendant Goldston stating, "oh yes I will." Ultimately Defendant Goldston instructed

Defendant McPeake to seize the Plaintiff's cell phone in order to stop it from recording. Without

Plaintiff's recording, there was no other method of retaining a record of the ongoing search and

seizure which was occurring on his property and in his home. Despite the fact that Family Court

judges are required to record their proceedings for the record, Defendant Goldston was not

recording her actions. At one point, a deputy sheriff, Bobby Stump, on his own began recording

inside the Plaintiff's home, recording a small portion of the search and seizure occurring inside.

The Plaintiff was never provided with a copy of the video, despite requesting it and submitting

FOIA requests.

Defendant Goldston's bailiff, Jeff McPeake, called two other deputies to assist in forcing

the Plaintiff to allow the defendants inside Plaintiff's home. A search and seizure occurred inside

Plaintiff's home, lasting approximately 20 to 30 minutes. Items of personal property were seized,

some of which were later returned due to being the incorrect items. There was no inventory or

written documentation created pertaining to what was taken, and what was not taken. There was no police report created by either of the three police officers who participated in the search and seizure.

Following public release of the small portion of video which was recorded prior to Defendant Goldston forcing the recordings to stop, the Judicial Investigation Commission opened an investigation into Defendant Goldston. This investigation culminated in a Formal Statement of Charges against Defendant Goldston, wherein it was revealed that she had been engaging in searches and seizures in the homes of litigants appearing in her court for around twenty years. Through counsel, Defendant Goldston entered a settlement agreement with Judicial Disciplinary Counsel, wherein she admitted the factual allegations in the Formal Statement of Charges and admitted to engaging in violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct. As further part of the Settlement Agreement which she signed, Defendant Goldston "admitted her wrongdoing" and jointly agreed to recommend to the Judicial Hearing Board and the State Supreme Court that she be censured and fined $5,000.00 as an appropriate sanction for her violations.

<u>ARGUMENT</u>

A. **Judicial Immunity**

Defendant Goldston's primary argument is an assertion of judicial immunity. In her view of judicial immunity, there is no action she could take that would deprive her of judicial immunity, so long as those actions are taken against a litigant who has an active proceeding pending in her court. However, her interpretation of the law of judicial immunity is overly broad and ignores the established exceptions, which after examining the allegations in the light most

4

favorable to the Plaintiff, deprive Defendant Goldston of any claim to judicial immunity - especially at the 12(b)(6) stage.

Defendant Goldston engaged in nonjudicial actions which were not taken in a judicial capacity. She engaged in functions and behaviors which are not normally performed by a judge and which are wholly outside the expectations of litigants in Family Court - or any court. Defendant Goldston's personal direction of, and personal participation in, the search and seizure inside the Plaintiff's home, consisted of an executive enforcement act, rather than a judicial act in nature. As a consequence, Judge Goldston does not enjoy judicial immunity for her actions taken on the property of the Plaintiff on March 4, 2020, as alleged herein in detail. *See* Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

The Supreme Court has made clear that "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). The justification must take care to explain why the official hoping to secure absolute immunity would not be sufficiently shielded by qualified immunity, which already affords officials considerable leeway to perform their jobs without fear of personal liability. Indeed, as the Court has explained, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been 'quite sparing' in our recognition of absolute immunity, and have refused to extend it any 'further than its justification would warrant.' " Burns v. Reed, 500 U.S. 478, 486–87, (1991).

Defendant Goldston cites Mireles for her argument that judicial immunity should apply. However, Mireles demonstrates the opposite. The Supreme Court has also made clear that "a

judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Forrester v. White, 484 U.S. 219, 227-229 (1988). To determine whether a judge performs a "judicial act," courts consider whether the judge engaged in action normally performed by a judge, and whether the parties dealt with the judge in her judicial capacity. Mireles, 502 U.S. at 12. In Mireles, the defendant judge became angry at an attorney who was absent from morning call in his courtroom and ordered the police officer bailiff "to forcibly and with excessive force seize and bring plaintiff into his courtroom." Id. at 11. The Court noted that a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." Id; *but see* Id. at 14-15 (Stevens, J. Dissenting) ("Ordering a battery has no relation to a function normally performed by a judge. If an interval of a minute or two had separated the two orders, it would be undeniable that no immunity would attach to the latter order. The fact that both are alleged to have occurred as part of the same communication does not enlarge the judge's immunity.").

The allegations that Defendant Judge Goldston personally engaged in, and directed, a search and seizure at and inside the Plaintiff's residence, along with three law enforcement officers, which resulted in the actual seizure of items of physical property from inside the Plaintiff's home, exists in stark contrast to allegations against the judge in Mireles. The Supreme Court expressly distinguished "judicial" actions from actions taken by a judge which are "executive" in nature, and therefore not protected by judicial immunity:

> Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." Id. 435 U.S., at 362 . In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

6

Nor does the fact that Judge Mireles' order was carried out by police officers somehow transform his action from "judicial" to "executive" in character. As <u>Forrester</u> instructs, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." 484 U.S., at 229 . A judge's direction to an executive order to bring counsel before the court is no more executive in character than a judge's issuance of a warrant for an executive officer to search a home. *See* <u>Burns v. Reed</u>, 500 U.S. 478 (1991) ("[T]he issuance of a search warrant is unquestionably a judicial act").

<u>Mireles</u> at 13. Indeed, as Justice Stevens pointed out in Footnote 1 of his dissent, a judge is not entitled to immunity when acting in an enforcement capacity. <u>Supreme Court of Virginia v. Consumers Union of United States, Inc</u>., 446 U.S. 719, 736-737, 100 S.Ct. 1967 1977, 64 L.Ed. 2d 641 (1980); *cf*. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 520-524, 105 S.Ct. 2806, 2812-2814, 86 L.Ed.2d 411 (1985) (Attorney General not absolutely immune when performing "national security," rather than prosecutorial, function).[1] It's the nature of the function which invokes immunity - not the identity of the individual.

Moreover, the act of a judge personally bringing law enforcement to a litigant's home and then engaging in a search and seizure inside the home, is not a general function normally performed by a judicial officer. The alleged conduct doesn't consist of mere "mistakes" or "erroneous acts" in excess of  authority during an otherwise appropriate judicial act. Rather, Judge Goldston's conduct - searching and seizing - is entirely "executive" in nature. In contrast, the Supreme Court explained that issuing a search warrant is inherently judicial in nature. <u>Mireles</u> at 13. Therefore executing a search warrant is inherently executive in nature. Here,

---

[1] *See also* <u>Archie v. Lanier</u>, 95 F.3d 438, 441 (6th Cir. 1996) (holding that "stalking and sexually assaulting a person, no matter the circumstances, do not constitute 'judicial acts'"); <u>Zarcone v. Perry</u>, 572 F.2d 52, 53 (2d Cir. 1978) (ordering coffee vendor handcuffed and subjecting him to "pseudo-official inquisition" because judge did not like his coffee are not judicial acts), *cert. denied*, 439 U.S. 1072 (1979).

Defendant Goldston did not issue a search warrant. Nor did she issue an order finding Plaintiff in contempt. She acted wholly outside the general practice and authority of a judge, much less a Family Court judge.

In her memorandum, Defendant Goldston claims, "It is not uncommon for a judge, with or without a jury, to move proceedings to the site of an incident in order to view the scene or evidence."[2] However, the West Virginia Judicial Investigation Commission already debunked this fallacious example during the judicial disciplinary proceedings against the Defendant. When asked by Judicial Disciplinary Counsel, Defendant Goldston could provide no statute, rule or case that gave her the authority to conduct what she described as "home visits." She also acknowledged that there was nothing in the Family Court's contempt powers that gave her the authority to conduct a so-called "home visit."[3] Defendant Goldston admitted to improperly putting herself in the role of litigant during the Plaintiff's contempt proceedings.[4] Given that Defendant Goldston admittedly placed herself in the role of litigant against the Plaintiff, which resulted in the unconstitutional search and seizure of Plaintiff's home, which occurred only following the threat of arrest and imprisonment of the Plaintiff, she has admittedly has departed from actions of a "judicial" nature. This is evidenced by the fact that she admitted to violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct and agreed that she should be censured and fined for her wrongdoing.[5] As such, it is highly uncommon for a judge to engage in investigatory actions or search and seizure actions. Where

---

[2] Def.'s Mem. at 8

[3] Complaint at 32.

[4] Complaint at 35.

[5] Complaint at 36, 37.

such extrajudicial wrongdoing has occurred, albeit rarely occurring, it has been punished with

disciplinary charges and sanctions.[6]

Moreover, similar to the Supreme Court's example of a probate judge trying a criminal

case,[7] the Defendant's request for judicial immunity must be viewed through the lens of the fact

that Defendant Goldston is a Family Court Judge. As a limited jurisdiction court, a Family Court

has no authority to conduct home views. W. Va. Code § 51-2A-2(e) provides:

> A family court is a court of limited jurisdiction. A family court is a court of record only
> for the purposes of exercising jurisdiction in the matters for which the jurisdiction of the
> family court is specifically authorized in this section and in chapter 48 of the code. A
> family court may not exercise the powers given courts of record in § 51-5-1 of this code
> or exercise any other powers provided for courts of record in this code unless specifically
> authorized by the Legislature. A family court judge is not a "judge of any court of record"
> or a "judge of a court of record" as the terms are defined and used in § 51-9-1 et seq. of
> this code.

As the Judicial Disciplinary Counsel stated in their brief to the State Supreme Court in the

Defendant's disciplinary proceedings:

> The instant case is about a family court judge who violated the Code of Judicial Conduct.
> It is not about a magistrate or a circuit court judge. There is no statute, rule or case law
> that allows a family court judge to conduct a home view in a contempt proceeding.
> Respondent could provide none, the family court judge representatives to the JIC[8] and the
> JHB[9] could provide none, and the undersigned could find none. It is because none exists.
> As such, the family court has no independent authority to conduct a home view and
> Respondent violated the Code of Judicial Conduct by exceeding her authority. If family
> court judges want to conduct home visits, they should have the legislature enact a statute
> or the State Supreme Court adopt a rule that gives them the authority to take such
> action…..

_____

[6] See.e.g., August 25, 2020 Public Admonishment of Judge Eric Shuck; In the Matter of Aboulhosn,
Complaint No. 91-2013.

[7] *See infra* at 10.

[8] Judicial Investigation Commission

[9] Judicial Hearing Board

Based upon the foregoing, the family court does not have the inherent authority to conduct a home view absent consent of the parties. Moreover, this was not a home view in the traditional sense. It was an unreasonable search and seizure. Search and seizure is an executive branch function. Therefore, Respondent exceeded her authority and in doing so repeatedly violated the Code of Judicial Conduct. On the other hand, the contempt statutes gave Respondent appropriate remedies, but she ignored them. She could have found Mr. Gibson in contempt after hearing all of the evidence and given him an opportunity to purge himself of his contumacious behavior. Failing that, she could have issued some type of order that allowed the Sheriffs Office to go in and retrieve the items.[10]

In <u>Stump v. Sparkman,</u> the Supreme Court held that Judge Harold D. Stump had performed a judicial act when he ordered a mentally retarded girl to undergo a tubal ligation at the request of her mother. The Court explained that absolute immunity applies to actions taken by judges "in error, . . . maliciously, or . . . in excess of [their] authority," but not in the "clear absence of all jurisdiction." To distinguish between these two standards, the Court provided an example:

> [I]f a probate judge, with jurisdiction over only wills and estates should try a criminal case, he would be acting in the clear absence of jurisdiction. . . . [O]n the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction.

<u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978). A judge is protected only by qualified immunity when carrying out administrative functions. In <u>Forrester v. White</u>, 484 U.S. 219 (1988) the Supreme Court held that when a judge fired a probation officer, he performed an administrative act and was thus protected only by qualified immunity. The Court rejected the argument that judges should have absolute immunity for employment decisions because an incompetent employee can impair the judge's ability to make sound judicial decisions. The Court reasoned that employment decisions made by judges "cannot meaningfully be distinguished

---

[10] Judicial Disciplinary Counsel's Brief in Support of Joint Agreement to Discipline at 21, 24-25.

from" employment decisions made by district attorneys and other executive officials, and "no one claims they give rise to absolute immunity from liability in damages under § 1983." Id. at 229.

Viewing the allegations in the light most favorable to the Plaintiff, and assuming those facts to be true, Defendant Goldston is not entitled to judicial immunity. It is her burden of proving its application, and such a burden cannot be established given the allegations: that Judge Goldston improperly removed herself from the role of Family Court Judge, and inserted herself into the role of a litigant against the Plaintiff, culminating in the forcible search and seizure of his home, along with three law enforcement officers. Such actions are not judicial in nature, and therefore are not entitled to judicial immunity, but rather only qualified immunity, which has not been asserted. Therefore the Defendants' motion to dismiss must be denied.

### B.     Eleventh Amendment

Defendant Goldston also claims that this Court lacks subject matter jurisdiction due to the application of the Eleventh Amendment to the U.S. Constitution. However, the Defendant misunderstands the application of the Eleventh Amendment. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." By "draw[ing] upon principles of sovereign immunity," the Supreme Court has "construe[d] the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *See* Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (internal quotation marks omitted). The Court has also recognized that the States'

Eleventh Amendment immunity may extend to "state agents and state instrumentalities." *See* Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *quoted by* Pense v. Md. Dep't of Pub. Safety & Corr. Servs., 926 F.3d 97 (4th Cir. 2019).

In the case *sub judice*, the Eleventh Amendment does not foreclose the relief requested by the Plaintiff. As against Defendant Louise E. Goldston, named as a defendant in her individual capacity, the Eleventh Amendment is irrelevant because she cannot invoke it, because she is not a state agency or state official sued in her official capacity. The Eleventh Amendment does not grant immunity when a §1983 claim for damages is asserted against a state official in her personal capacity. Hafer v. Melo, 502 U.S. 21, 30–31 (1991). The monetary relief awarded on such a claim would not be payable out of the state treasury, but would come from the state official's personal funds, which are not protected by the Eleventh Amendment. Id. The fact that the state agreed to indemnify the state official for a personal capacity monetary judgment does not create Eleventh Amendment immunity because the decision to indemnify is a voluntary policy choice of state government; it is not compelled by mandate of the federal court. *See, e.g.*, Stoner v. Wis. Dep't of Agric., 50 F.3d 481, 482–83 (7th Cir. 1995).

Viewing the Complaint, it's clear that Defendant Goldston is named in her personal and individual capacity. In the header, it expressly states "LOUISE E. GOLDSTON, individually." In the "PARTIES" SECTION, in paragraph 2, it states that "[s]he is named herein as a defendant in her individual capacity." Therefore, the Eleventh Amendment is inapplicable and the Defendant's motion to dismiss on those grounds must be denied.

CONCLUSION

Rule 12(b)(6) provides for a defense to a claim by motion for "failure to state a claim upon which relief can be granted."  In deciding motions under 12(b)(6), federal courts can take judicial notice of all matters of public record, such as the Formal Statement of Charges against Judge Louise E. Goldston, as well as her admission to having violated violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct, including admittedly improperly placing herself into the role of litigant against Matthew Gibson. *See* Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004). Judicial immunity is awarded to the function and nature of the act, rather than the identity of the individual. Defendant Goldston engaged in an unconstitutional warrantless search and seizure. Therefore, Plaintiff respectfully requests that the motion to dismiss be denied.

MATTHEW GIBSON,
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

      Plaintiff,

vs.                     Civil Action No. 5:21-cv-00181
                        Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

      Defendant.

**<u>CERTIFICATE OF SERVICE</u>**

    I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFFS' RESPONSE TO DEFENDANT LOUISE E. GOLDSTON'S MOTION TO

DISMISS has been served upon counsel of record by using the CM/ECF System, this the 3rd day

of May, 2021 and addressed as follows:

Jennifer E. Tully, Esq.           J. Victor Flanagan, Esq.
Adam K. Strider, Esq.           Kevin J. Robinson, Esq.
Bailey & Wyant, PLLC          Pullin Fowler Flanagan, Brown & Poe, PLLC
500 Virginia Street, East, Suite 600   252 George Street
PO Box 3710                 Beckley, WV 25801
Charleston, WV 25337-3710      *Counsel for Raleigh County Defendants*
*Counsel for Louise E. Goldston*

Arie M. Spitz, Esq.
Kevin A. Nelson, Esq.
Jason L. Holliday, Esq.
Dinsmore & Shohl, LLP
707 Virginia Street, East, Suite 1300

Charleston, WV 25339-1887
*Counsel for Kyle Lusk*

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com