IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

      Plaintiff,

vs.                                        Civil Action No. 5:21-cv-00181
                                             Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

      Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANTS COUNTY
COMMISSION OF RALEIGH COUNTY, JEFF MCPEAKE, BRIAN
WHITE AND BOBBY STUMP'S MOTION TO DISMISS**

Now comes the Plaintiff, by and through counsel, John H. Bryan, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and moves the Court to deny the County Commission of Raleigh County, Jeff McPeake, Brian White and Bobby Stump's motion to dismiss. In support hereof, the Plaintiff states as follows:

INTRODUCTION

This case arises from actions taken by Defendant Goldston on March 4, 2020 at the Plaintiff's home, wherein she personally directed, and participated in, a search and seizure of the Plaintiff, his home, and personal possessions, under the auspices of holding a Family Court contempt hearing at the Plaintiff's residence.

1

FACTS ALLEGED IN THE COMPLAINT

Plaintiff's divorce action was litigated in the Family Court of Raleigh County, West Virginia, which is the 13th Family Court Circuit. Defendant Louise E. Goldston was the presiding Family Court judge. The divorce was finalized at a final hearing on September 18, 2018. During the final hearing, Plaintiff's ex-wife was represented by Defendant Kyle Lusk, who threatened during the hearing to bring Defendant Goldston to Plaintiff's home and search the home for items of personal property sought by Mr. Lusk's client. An agreement pertaining to disputed personal property was reached, with a document being submitted to the Court memorializing and describing the agreement. The agreement was supposed to have been attached to the final order, but was not attached to the final order.

Approximately a year and a half later, Mr. Lusk filed a petition for contempt on behalf of Plaintiff's ex-wife, claiming that she didn't receive all of the items of personal property. Plaintiff was now acting *pro se*. Mr. Lusk called the Plaintiff the night prior to the scheduled hearing at the Family Court of Raleigh County, which was to be held before Defendant Goldston. Lusk left a voicemail claiming that Judge Goldston had asked him to convey his settlement proposal, which was a demand for $5,000.00, "[o]therwise, we'll see you tomorrow." Plaintiff arrived at the hearing *pro se* to defend against the contempt allegations.

At the hearing, prior to any finding of contempt, Defendant Goldston stopped the hearing, acting sua sponte, suddenly and without explanation asked Mr. Gibson for his home address and ordered the parties to meet at Mr. Gibson's house in ten minutes. She failed to explain the reason for the parties traveling to Plaintiff's home. He was unable to raise an objection while still at the

hearing. Once everyone arrived at Mr. Gibson's home on March 4, 2020, and the purpose of the visit became clear, the Plaintiff moved to recuse Defendant Goldston on the grounds that she had become a potential witness in the case. Judge Goldston denied the motion as untimely. Plaintiff then verbally refused to allow Defendant Goldston or anyone else in his house without a search warrant. Defendant Goldston threatened to put Mr. Gibson in jail if he denied them entry into his house. Defendant Goldston threatened to jail the Plaintiff six times while on his property that day.

      Plaintiff video and audio recorded the initial few minutes of the interactions on his property, including the portion where Plaintiff's motion for recusal was denied, as well as Plaintiff stating that nobody was going in his house without a search warrant. The video captured Defendant Goldston stating, "oh yes I will." Ultimately Defendant Goldston instructed Defendant McPeake to seize the Plaintiff's cell phone in order to stop it from recording. Without Plaintiff's recording, there was no other method of retaining a record of the ongoing search and seizure which was occurring on his property and in his home. Despite the fact that Family Court judges are required to record their proceedings for the record, Defendant Goldston was not recording her actions. At one point, a deputy sheriff, Bobby Stump, on his own began recording inside the Plaintiff's home, recording a small portion of the search and seizure occurring inside. The Plaintiff was never provided with a copy of the video, despite requesting it and submitting FOIA requests.

      Defendant Goldston's bailiff, Jeff McPeake, called two other deputies to assist in forcing the Plaintiff to allow the defendants inside Plaintiff's home. A search and seizure occurred inside Plaintiff's home, lasting approximately 20 to 30 minutes. Items of personal property were seized,

some of which were later returned due to being the incorrect items. There was no inventory or written documentation created pertaining to what was taken, and what was not taken. There was no police report created by either of the three police officers who participated in the search and seizure.

Following public release of the small portion of video which was recorded prior to Defendant Goldston forcing the recordings to stop, the Judicial Investigation Commission opened an investigation into Defendant Goldston. This investigation culminated in a Formal Statement of Charges against Defendant Goldston, wherein it was revealed that she had been engaging in searches and seizures in the homes of litigants appearing in her court for around twenty years. Through counsel, Defendant Goldston entered a settlement agreement with Judicial Disciplinary Counsel, wherein she admitted the factual allegations in the Formal Statement of Charges and admitted to engaging in violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct. As further part of the Settlement Agreement which she signed, Defendant Goldston "admitted her wrongdoing" and jointly agreed to recommend to the Judicial Hearing Board and the State Supreme Court that she be censured and fined $5,000.00 as an appropriate sanction for her violations.

ARGUMENT

**I.     Qualified Immunity**

Defendants McPeake, White and Stump assert application of the doctrine of qualified immunity. However, there is perhaps no more clearly established civil rights violation than a warrantless search of a citizen's home, and therefore qualified immunity is unavailable.

Qualified immunity is an affirmative defense intended to shield public officials from civil

suits arising out of their performance of job-related duties. *See, e.g.*, Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." In re Allen, 106 F.3d 582, 594 (4th Cir. 1997) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff...." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. Pearson, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013).

It's well established that qualified immunity is inapplicable where a police officer violates clearly established statutory or constitutional rights of which a reasonable person would have known - *citing* Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018)). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). The Supreme Court has ruled that no reasonable police officer could claim to be unaware of the basic rule that, absent consent or exigency, a warrantless search of a home is presumptively unconstitutional, and therefore would not be entitled to qualified immunity:

> "[T]he right of a man to retreat into his own home and there be free from unreasonable governmental intrusion' " stands " '[a]t the very core' of the Fourth Amendment," Kyllo v. United States, 533 U. S. 27, 31 (2001), our cases have firmly established the "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," Payton v. New York, 445 U. S. 573, 586

(1980). Thus, "absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." Id., at 587–588 (footnote omitted). See Kyllo, 533 U. S., at 29.

Groh v. Ramirez, 540 U.S. 551, 559 (2004) (citations omitted). These principles are equally applicable to the respondent's search and seizure inside the Plaintiff's home:

> That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' Camara v. Municipal Court, 387 U. S. 523, 528–529 (1967). See Steagald v. United States, 451 U. S. 204, 211–212 (1981); Jones v. United States, 357 U. S. 493, 499 (1958)." Ibid.

Id. 540 U.S. at 560 (2004).

Following the clearly established precedent of the Supreme Court, the police officer defendants who jointly participated in the warrantless search of Mr. Gibson's home, they cannot be granted qualified immunity under the facts alleged in the Complaint. Examining the facts in the light most favorable to the Plaintiff, they demonstrate a warrantless search and seizure with no reasonable factual basis for an exception. The said defendants cannot obtain qualified immunity for the violation of the most fundamental *and clearly established* tenant of the Fourth Amendment:

> **No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional**. See Payton, 445 U. S., at 586-588. Indeed, as we noted nearly 20 years ago in Sheppard:[1] "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."

Id., 540 U.S. at 564 (2004) (emphasis added).

---

[1] Massachusetts v. Sheppard, 468 U.S. 981 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional").

Where the facts show a warrantless search or seizure of a home, the respondent can seek to obtain summary judgment only "if [the respondent] can establish as a matter of law that a reasonable officer could have believed that the search comported with the Fourth Amendment even though it actually did not." Anderson v. Creighton, 483 U.S. 635 (1987). Thus, the respondent's actions are not "beyond debate." To the contrary, the defendants are required to show, as a matter of law, that their actions justifiably fall within an exception to the presumptive rule. *See* Groh., 540 U.S. at 564 (2004). Therefore, the said defendants' motion to dismiss on grounds of qualified immunity should be denied.

Defendant McPeake argues that since he was acting as bailiff for Defendant Judge Goldston, that he acted reasonably in being in her presence.[2] He also argues that Plaintiff only alleged that he seized a cell phone and otherwise didn't personally seize other property from the residence. However, for the same reasons discussed in the response to the motion to dismiss filed by Defendant Goldston, Defendant McPeake could not have acted reasonably in believing that he could lawfully - whether ordered to do so by the judge or not - participate and enable a search and seizure of Mr. Gibson's home against his will under the auspices of it being a relocated contempt petition hearing. There is no applicable exception to the warrant requirement which could apply to absolve him of liability. There was no emergency or exigency. Given the fact that Mr. Gibson demanded a warrant and was threatened with imprisonment, utilizing Deputy McPeake's authority under color of law, there can be no voluntary consent. Therefore, there can be no award of qualified immunity.

---

[2] Def.'s Mem. at 11

Defendant deputies White and Stump simply argue that Plaintiff didn't allege any facts indicating that they took part in the search and seizure. They also argue that there's no legal authority indicating that they were required to submit a report documenting their presence at the Plaintiff's residence. To the contrary, the Complaint alleges that "[o]nce inside the Plaintiff's home, Judge Goldston directed the deputies to assist Plaintiff's ex-wife and Defendant Lusk in searching and seizing the home's contents."[3] It also alleged that the Plaintiff "was forced by Defendant Goldston to open his combination gun safe for inspection by his ex-wife and the deputies."[4] The Complaint further alleged that Defendants Stump and White, after arriving at Plaintiff's residence, "began to jointly participate in the search and seizure occurring inside Plaintiff's home."[5] Under the heading for Count One of the Complaint, Plaintiff alleged that "White and Stump acted under color of law when they entered the Plaintiff's home and property as alleged herein on March 4, 2020" and that while so doing, violated the Plaintiff's Fourth Amendment rights.[6] Thereafter, Defendants Stump and White were included in the allegations pertaining to the various elements sought to be proven under Count One.

The fact that Defendants White and Stump made no record of their involvement in, or presence at, the subject search and seizure is not a federal right which was violated. Rather, it serves as evidence of the fact that they engaged in misconduct on March 4, 2020 wherein they jointly participated in an illegal and unconstitutional search and seizure.

---

[3] Complaint at 27.

[4] Id.

[5] Complaint at 28.

[6] Complaint at 46.

## II. First Amendment Claims

Defendants McPeake, White and Stump argue that Plaintiff has not met the required federal pleading standards under Twombly for Count Two - violation of the First Amendment. However, that's just not the case. The Complaint is pled with a high degree of specificity which far exceeds federal pleading standards.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of [P]laintiff." Farnsworth v. Loved Ones in Home Care, LLC, No. 2:18-CV- 01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (*citing* E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." Robertson v. Sea Pines Real Estate Co., 679 F.3d 278, 288 (4th Cir. 2012) (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." Id.

Defendants argue that Plaintiff failed to properly plead that White and Stump seized his cell phone, and that Defendant McPeake was acting on an order from Defendant Goldston. It's

9

true that the Complaint does not allege that White and Stump were involved in the seizure of the cell phone, which was performed by McPeake, at the direction of Defendant Goldston. Thus Plaintiff is not making a First Amendment claim against White and Stump. McPeake, on the other hand, as the Complaint specifically alleges, was present during the entire incident and was personally involved in the First Amendment violation, which is being asserted against him.

Defendant McPeake argues that he should be granted qualified immunity due to being ordered by Judge Goldston to perform the seizure. However, merely following orders is never a defense to a civil rights violation. Moreover, the Supreme Court has refused to extend judicial immunity - even assuming a judge would have it under the circumstances - to officials whose "judgments are 'functionally comparable' to those of judges" and who "exercise a discretionary judgment" as a part of their function. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 124 L. Ed. 2d 391, 113 S. Ct. 2167 (1993) (Judicial immunity does not extend to court reporters' potential liability for the courtroom recording of proceedings). Additionally, the fact that an official claims to have acted on advice of counsel or pursuant to orders of a superior normally will not protect the official if he violated clearly established federal law. *See* 1A Schwartz, supra note 814, § 9A. *See, e.g.*, Lawrence v. Reed, 406 F.3d 1224, 1230–31 (10th Cir. 2005). Therefore, Defendant McPeake's defense of merely "following orders" cannot insulate him from responsibility for his voluntary actions.

### III. Qualified Immunity and the Political Subdivision

Defendant County Commission of Raleigh County argues they should be entitled to qualified immunity. However, qualified immunity is not a defense to the direct liability of political subdivisions. Only State and local officials who carry out executive and administrative

functions may assert qualified immunity. *See, e.g.*, Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Groh v. Ramirez, 540 U.S. 551, 563 (2004); Saucier, 533 U.S. at 200–01; Anderson v. Creighton, 483 U.S. 635, 638 (1987); Malley v. Briggs, 475 U.S. 335, 340 (1986). "[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified under §1983." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993). *See, e.g.*, Burge v. Parish of St. Tammany, 187 F.3d 452, 466–67 (5th Cir. 1999) (absolute prosecutorial immunity not available in official capacity suit); Goldberg v. Town of Rocky Hill, 973 F.2d 70, 72 (2d Cir. 1992) (municipality may not assert legislative immunity). Further, state law immunities may not be asserted by municipalities sued under § 1983. Howlett v. Rose, 496 U.S. 356, 375–76 (1990) (state court § 1983 action). *See also* Alden v. Maine, 527 U.S. 706, 740 (1994) (reaffirming Howlett).

A Monell Claim is asserted against the RCC in Count Three of the Complaint. Qualified immunity is not an available defense. Therefore the motion to dismiss must be denied.

    **IV.**    **Fourteenth Amendment Claims**

Plaintiff is not asserting the 14th Amendment claim against the Raleigh County defendants, which is directed at Defendant Goldston.

                                          MATTHEW GIBSON,
                                          By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

        Plaintiff,

vs.                                        Civil Action No. 5:21-cv-00181
                                             Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

        Defendant.

## CERTIFICATE OF SERVICE

      I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS COUNTY COMMISSION OF RALEIGH COUNTY, JEFF MCPEAKE, BRIAN WHITE AND BOBBY STUMP'S MOTION TO DISMISS has been served upon counsel of record by using the CM/ECF System, this the 3rd day of May, 2021 and addressed as follows:

Jennifer E. Tully, Esq.
Adam K. Strider, Esq.
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
PO Box 3710
Charleston, WV 25337-3710
*Counsel for Louise E. Goldston*

Arie M. Spitz, Esq.
Kevin A. Nelson, Esq.
Jason L. Holliday, Esq.

J. Victor Flanagan, Esq.
Kevin J. Robinson, Esq.
Pullin Fowler Flanagan, Brown & Poe, PLLC
252 George Street
Beckley, WV 25801
*Counsel for Raleigh County Defendants*

13

Dinsmore & Shohl, LLP
707 Virginia Street, East, Suite 1300
Charleston, WV 25339-1887
*Counsel for Kyle Lusk*

                                            /s John H. Bryan
                                            John H. Bryan (WV Bar No. 10259)
                                            JOHN H. BRYAN, ATTORNEYS AT LAW
                                            411 Main Street
                                            P.O. Box 366
                                            Union, WV 24983
                                            (304) 772-4999
                                            Fax: (304) 772-4998
                                            jhb@johnbryanlaw.com