IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

    Plaintiff,

vs.                                            Civil Action No. 5:21-cv-00181
                                               Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT
## KYLE LUSK'S MOTION TO DISMISS

Now comes the Plaintiff, by and through counsel, John H. Bryan, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and moves the Court to deny the motion to dismiss filed by Defendant Kyle Lusk. In support hereof, the Plaintiff states as follows:

INTRODUCTION

This case arises from actions taken by Defendant Goldston on March 4, 2020 at the Plaintiff's home, wherein she personally directed, and participated in, a search and seizure of the Plaintiff, his home, and personal possessions, under the auspices of holding a Family Court contempt hearing at the Plaintiff's residence. This was done at the request of Defendant Kyle Lusk, who is alleged to be a private party who acted jointly with a state actor, so as to become liable under Section 1983, under the doctrine joint liability.

1

FACTS ALLEGED IN THE COMPLAINT

Plaintiff's divorce action was litigated in the Family Court of Raleigh County, West Virginia, which is the 13th Family Court Circuit. Defendant Louise E. Goldston was the presiding Family Court judge. The divorce was finalized at a final hearing on September 18, 2018. During the final hearing, Plaintiff's ex-wife was represented by Defendant Kyle Lusk, who threatened during the hearing to bring Defendant Goldston to Plaintiff's home and search the home for items of personal property sought by Mr. Lusk's client. An agreement pertaining to disputed personal property was reached, with a document being submitted to the Court memorializing and describing the agreement. The agreement was supposed to have been attached to the final order, but was not attached to the final order.

Approximately a year and a half later, Mr. Lusk filed a petition for contempt on behalf of Plaintiff's ex-wife, claiming that she didn't receive all of the items of personal property. Plaintiff was now acting *pro se*. Mr. Lusk called the Plaintiff the night prior to the scheduled hearing at the Family Court of Raleigh County, which was to be held before Defendant Goldston. Lusk left a voicemail claiming that Judge Goldston had asked him to convey his settlement proposal, which was a demand for $5,000.00, "[o]therwise, we'll see you tomorrow." Plaintiff arrived at the hearing *pro se* to defend against the contempt allegations.

At the hearing, prior to any finding of contempt, Defendant Goldston stopped the hearing, acting sua sponte, suddenly and without explanation asked Mr. Gibson for his home address and ordered the parties to meet at Mr. Gibson's house in ten minutes. She failed to explain the reason for the parties traveling to Plaintiff's home. He was unable to raise an objection while still at the hearing. Once everyone arrived at Mr. Gibson's home on March 4, 2020, and the purpose of the

visit became clear, the Plaintiff moved to recuse Defendant Goldston on the grounds that she had become a potential witness in the case. Judge Goldston denied the motion as untimely. Plaintiff then verbally refused to allow Defendant Goldston or anyone else in his house without a search warrant. Defendant Goldston threatened to put Mr. Gibson in jail if he denied them entry into his house. Defendant Goldston threatened to jail the Plaintiff six times while on his property that day.

Plaintiff video and audio recorded the initial few minutes of the interactions on his property, including the portion where Plaintiff's motion for recusal was denied, as well as Plaintiff stating that nobody was going in his house without a search warrant. The video captured Defendant Goldston stating, "oh yes I will." Ultimately Defendant Goldston instructed Defendant McPeake to seize the Plaintiff's cell phone in order to stop it from recording. Without Plaintiff's recording, there was no other method of retaining a record of the ongoing search and seizure which was occurring on his property and in his home. Despite the fact that Family Court judges are required to record their proceedings for the record, Defendant Goldston was not recording her actions. At one point, a deputy sheriff, Bobby Stump, on his own began recording inside the Plaintiff's home, recording a small portion of the search and seizure occurring inside. The Plaintiff was never provided with a copy of the video, despite requesting it and submitting FOIA requests.

Defendant Goldston's bailiff, Jeff McPeake, called two other deputies to assist in forcing the Plaintiff to allow the defendants inside Plaintiff's home. A search and seizure occurred inside Plaintiff's home, lasting approximately 20 to 30 minutes. Items of personal property were seized, some of which were later returned due to being the incorrect items. There was no inventory or

written documentation created pertaining to what was taken, and what was not taken. There was no police report created by either of the three police officers who participated in the search and seizure.

Following public release of the small portion of video which was recorded prior to Defendant Goldston forcing the recordings to stop, the Judicial Investigation Commission opened an investigation into Defendant Goldston. This investigation culminated in a Formal Statement of Charges against Defendant Goldston, wherein it was revealed that she had been engaging in searches and seizures in the homes of litigants appearing in her court for around twenty years. Through counsel, Defendant Goldston entered a settlement agreement with Judicial Disciplinary Counsel, wherein she admitted the factual allegations in the Formal Statement of Charges and admitted to engaging in violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct. As further part of the Settlement Agreement which she signed, Defendant Goldston "admitted her wrongdoing" and jointly agreed to recommend to the Judicial Hearing Board and the State Supreme Court that she be censured and fined $5,000.00 as an appropriate sanction for her violations.

ARGUMENT

A.   **Summons**

Defendant Lusk claims that he was not served with a summons. However, Defendant Lusk was served with a summons, as evidenced by the return of service executed by the process server with the Raleigh County Sheriff's Office, which is already of record herein at document No. 6, which indicates that Mr. Lusk was served on March 29, 2021.

### B. Conspiracy with a State Official

Defendant Lusk also argues that Mr. Lusk was neither a state actor, nor acting under color of state law. However, as the Complaint alleges in Count Six - Conspiracy with a State Official, A private party who jointly participates in the alleged constitutional wrongdoing with a state or local official is engaged in state action. *See* Lugar v. Edmonson Oil Co., 457 U.S. 922, 941 (1982); Dennis v. Sparks, 449 U.S. 24, 27–28 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).[1] Defendant Kyle Lusk is not a state official. However, Defendant Lusk acted under color of state law by conspiring with one or more state officials to deprive the Plaintiff of his federally protected rights.

In Dennis v. Sparks, 449 U.S. 24 (1980) the Supreme Court held that private parties who corruptly conspire with a judge act under color of state law, even though the judge may be protected by judicial immunity. In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), the Supreme Court held that a creditor who used a state prejudgment attachment statute acted under color of state law because, in attaching the debtor's property, with help from the court clerk and sheriff, the creditor used state power. The assistance from state officials made the creditor a joint participant in state action. Id. at 937.

The joint action doctrine has often been used where a private party seeks to obtain repossession of personal property in which law enforcement takes a role. The Eighth Circuit stated that "there is no state action if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." Moore v. City of Poplar Bluff, 404 F.3d 1043 (8th

---

[1] Complaint at 103.

Cir. 2006); *see also* Barrett v. Harwood, 189 F.3d 297, 302 (2d Cir. 1999) (case law does not provide "bright line" but a "spectrum" of police involvement in the repossession), *cert. denied*, 530 U.S. 1262 (2000).

The Complaint alleges an agreement between Defendant Goldston and Defendant Lusk wherein Defendant Lusk possessed the ability, as well as the perceived ability, to request that Defendant Goldston illegally search and seize the homes of litigants whom Lusk opposed.[2] The Complaint further alleges that this arrangement also served the goals of Defendant Goldston, who is a state actor, in that in exchange for Defendant Goldston's assistance to Defendant Lusk, she was provided with campaign donations, as well as political and social support from Defendant Lusk. This relationship, agreement and understanding helped secure her position as a Family Court Judge for a period of over 26 years.[3] The Complaint alleged conduct occurring pursuant to the agreement, in that Defendant Goldston searched and seized the residence of the Plaintiff on March 4, 2020, pursuant to the private *ex parte* request of Defendant Lusk.[4]

### C. Litigation Privilege

Defendant Lusk also asserts the so-called litigation privilege given his status as opposing counsel in the underlying divorce action. He attempts to assert the absolute immunity belonging to prosecutors, and also asserts common law litigation privilege. However, Mr. Lusk is not a prosecutor. Where allegations are alleged of corruption and conspiracy involving a state official which resulted in the deprivation of the Plaintiff's federally-protected rights, prosecutorial immunities do not protect him and common law litigation privilege is inapplicable.

---

[2] Complaint at 102.

[3] Complaint at 107.

[4] Complaint at 102.

Prosecutors are absolutely immune when acting as an advocate for the state by engaging in conduct that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976). Prosecutors are not absolutely immune for administrative actions or investigative functions not related to trial preparation. Prosecutorial immunity does protect the prosecutor even if he acted "with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (*citing* Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004)). Generally, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990).

Here, however, Defendant Lusk is not a prosecutor in a criminal proceeding, and even if he were, it's unlikely he would have a valid claim to prosecutorial immunity if he were to personally engage in the investigatory function of personally participating in a search and seizure of a party's residence. Moreover, just as judges do not personally engage in the executive functions of searching and seizing inside litigants' homes, the same common sense rationale operates to hinder Mr. Lusk's claim to litigation privilege as a lawyer. While it's true that there was a pending proceeding in the Family Court of Raleigh County, at no point in time should that proceeding have involved a search and seizure of Mr. Gibson's home under the threat of his incarceration. The civil rights violations occurring at Mr. Gibson's home should have never happened. They only happened due to the corrupt relationship between Defendant Judge Goldston and Defendant Lusk, which is not properly part of representing litigants in the judicial process, and which is therefore not applicable to common law litigation privilege.

CONCLUSION

Rule 12(b)(6) provides for a defense to a claim by motion for "failure to state a claim upon which relief can be granted." In deciding motions under 12(b)(6), federal courts can take judicial notice of all matters of public record, such as the Formal Statement of Charges against Judge Louise E. Goldston, as well as her admission to having violated violations of Rules 1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B) and 2.5 of the West Virginia Code of Judicial Conduct, including admittedly improperly placing herself into the role of litigant against Matthew Gibson. *See* Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004). In the context of Mr. Lusk's motion to dismiss, that amounts to requesting and enabling the presiding judge to achieve a serious deprivation of the constitutional rights of a *pro se* opposing litigant. Just as lawyers and judges should never be in the position of forcibly searching and seizing the home of a litigant, there likewise should be no litigation privilege extended to such allegations. Therefore, Plaintiff respectfully requests that the motion to dismiss be denied.

                                                   MATTHEW GIBSON,
                                                   By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

MATTHEW GIBSON,

      Plaintiff,

vs.                                                  Civil Action No. 5:21-cv-00181
                                                      Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

      Defendant.

## CERTIFICATE OF SERVICE

      I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing PLAINTIFFS' RESPONSE TO DEFENDANT KYLE LUSK'S MOTION TO DISMISS has been served upon counsel of record by using the CM/ECF System, this the 3rd day of May, 2021 and addressed as follows:

| | |
|---|---|
| Jennifer E. Tully, Esq. | J. Victor Flanagan, Esq. |
| Adam K. Strider, Esq. | Kevin J. Robinson, Esq. |
| Bailey & Wyant, PLLC | Pullin Fowler Flanagan, Brown & Poe, PLLC |
| 500 Virginia Street, East, Suite 600 | 252 George Street |
| PO Box 3710 | Beckley, WV 25801 |
| Charleston, WV 25337-3710 | *Counsel for Raleigh County Defendants* |
| *Counsel for Louise E. Goldston* | |

Arie M. Spitz, Esq.
Kevin A. Nelson, Esq.
Jason L. Holliday, Esq.
Dinsmore & Shohl, LLP
707 Virginia Street, East, Suite 1300

Charleston, WV 25339-1887
*Counsel for Kyle Lusk*

                                                /s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com