IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

MATTHEW GIBSON,

      **Plaintiff,**

v.                                          **Civil Action No. 5:21-CV-00181**

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

      **Defendants.**

## DEFENDANT KYLE LUSK'S REPLY
## IN SUPPORT OF HIS MOTION TO DISMISS

Plaintiff's claims against Defendant Kyle Lusk ("Defendant" or "Mr. Lusk") necessarily fail, not only because the litigation privilege—*not* the prosecutorial privilege—renders Mr. Lusk absolutely immune from Plaintiff's 42 U.S.C. §1983 against him, but also because his conspiracy claim is solely grounded on implausible and unsupported conclusions of vague, widespread backroom dealings between Defendant Judge Louise E. Goldston ("Judge Goldston") and Mr. Lusk to deprive Plaintiff of his Fourth Amendment rights.[1] The Complaint's factual allegations plainly demonstrate Mr. Lusk's role as a private attorney advocating for his client, not that of a state actor. Further, it is only by making "a conclusory allegation of agreement at some unidentified point," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that Plaintiff attempts to convert the ordinary conduct of an attorney into a nefarious, state-backed ploy to injure the

---

[1] Defendant notes at the outset that Plaintiff's Response to Kyle Lusk's Motion to Dismiss does not address Defendant's arguments on the alleged First Amendment violations by Mr. Lusk, and, therefore, he assumes Plaintiff has abandoned those claims.

Plaintiff. Because the factual allegations entitled to an assumption of truth fail to show Mr. Lusk conspired with Judge Goldston to act under the color of state law to deprive Plaintiff's constitutional rights, the Complaint fails to state a claim upon which relief can be granted.

### A. PLAINTIFF'S CONSPIRACY CLAIMS ARE CONCLUSORY AND IMPLAUSIBLE.

As argued in Mr. Lusk's Motion to Dismiss, Plaintiff failed to state a claim because he failed to plead sufficient facts to plausibly show that Mr. Lusk was acting under the color of state law at the time of the subject home visit. [Doc. 13]. As this Court has pointed out, the overwhelming view is that "'a lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983.'" *Loved Ones in Home Care, LLC v. Toor*, No. 2:19-cv-00134, 2019 U.S. Dist. LEXIS 107582, *6-7 (S.D.W. Va. Jun. 27, 2019 (quoting *Polk Ct. v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (collecting cases)) In addition, the Fourth Circuit has held that "private attorneys do not act under color of state law and a § 1983 suit may not be maintained against an attorney based on his representation. *Marcantoni v. Bealefeld*, 734 F. App'x 198, 199 (4th Cir. 2018). Simply stated, Plaintiff cannot maintain a civil rights cause of action under 42 U.S.C. §1983 because his claims against Mr. Lusk are solely based on Mr. Lusk's representation of his ex-wife in judicial proceedings.

In opposition to Mr. Lusk's Motion to Dismiss, Plaintiff merely responds that Mr. Lusk was acting "under color of state law by conspiring with one or more state officials to deprive the Plaintiff of his federally protected rights." [Doc. 17 at Page 5 of 10 PageID #: 284]. He contends that the Motion to Dismiss should be denied because he alleges in the Complaint that there was "an agreement between Defendant Goldston and Defendant Lusk wherein Defendant Lusk possessed the ability, as well as the perceived ability, to request that Defendant Goldston illegally

search and seize the homes of litigants whom Lusk opposed;" that "in exchange for Defendant Goldston's assistance to Defendant Lusk, she was provided with campaign donations, as well as political and social support from Defendant Lusk;" and that pursuant to the agreement "Defendant Goldston searched and seized the residence of the Plaintiff on March 4, 2020, pursuant to the private *ex parte* request of Defendant Lusk." [Doc. 17 at Page 6 of 10 PageID #: 285]. These conclusory and implausible allegations, however, do not meet the pleadings standard required under federal law.

It has been well-established by the U.S. Supreme Court that in addition to containing well-pleaded factual allegations, a complaint must also meet the "plausibility standard" set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under that rule, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" *Iqbal*, 556 U.S. at 678 (quotations omitted). To state a plausible claim for relief, a plaintiff must go beyond pleading merely the "sheer possibility" of unlawful activity by a defendant and must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotations and alteration omitted).

Plaintiff's conspiracy claims against Mr. Lusk arise from the March 4, 2020 home visit ordered by Judge Goldston as part of a hearing on a Petition for Contempt filed by Mr. Lusk on behalf of his client, Plaintiff's ex-wife. Plaintiff speculates in his Complaint that the home visit

was a result of a conspiracy between Judge Goldston and Mr. Lusk in which Mr. Lusk had the ability to request illegal search and seizures at opposing litigant's homes in exchange for campaign donations and unspecified political and social support for the Judge. [Doc. 1 at ¶102]. Plaintiff alleges that Mr. Lusk had advised Plaintiff's attorney, one year prior to the home visit, that the Judge was "big" on ordering such visits. While Plaintiff quotes a statement by Judge Goldston that "'[g]enerally, it's the attorney asks me to do it,'" [Doc. 1 at ¶94], he also admits that Mr. Lusk did not request the subject home visit in his Petition for Contempt or at the hearing. [Doc. 1 at ¶102]. Without support, Plaintiff concludes that the request had to have been made *ex parte*. [*Id.*] Beyond those bald allegations of a secret agreement and a "private *ex parte* request," Plaintiff provides no other support for his conspiracy claim against Mr. Lusk.

Conversely, in his Complaint Plaintiff alleges that Judge Goldston had regularly performed home visits for over 20 years as a family court judge—up to "two or three times a year," based on her testimony as part of her judicial disciplinary investigation. [Doc. 1 at ¶¶31–32, 92]. Plaintiff further asserts that she ordered these home visits in matters involving multiple other attorneys besides Mr. Lusk. [Doc. 1 at ¶97]. Indeed, aside from the home visit at issue in this case, Plaintiff does offer proof of any other home visits ordered by Judge Goldston in cases in which Mr. Lusk represented a party. Significantly, Plaintiff acknowledges that on the day of the hearing the Judge "*sua sponte*" ordered the parties to move the hearing to the Plaintiff's house to conduct search for property his ex-wife claimed he had not turned over as part of the divorce proceeding. [Doc. 1 at ¶16]. In Plaintiff's detailed allegations of what occurred during the alleged search and seizure, Plaintiff fails to allege any affirmative acts taken by Mr. Lusk in the alleged search and seizure of property. [*See* Doc. 1 at ¶¶27–29]. The only conclusion that Mr. Lusk believes can be reached

from these allegations is that his actions were solely those of legal counsel representing Plaintiff's ex-wife in a contentious judicial proceeding.

The cases cited by Plaintiff in opposition to Mr. Lusk's Motion to Dismiss are easily distinguishable. For example, *Dennis v. Sparks*, 449 U.S. 24 (1980),  only stands for the proposition that a private actor may be found to be acting under the color of state law for allegedly conspiring with a judge, even if the judge is found to be absolutely immune based on judicial immunity. *Id.* In *Sparks* (a pre-*Twombly/Iqbal* case), the plaintiffs brought a §1983 claim alleging that a judge and other defendants had corruptly conspired to illegally issue an injunction against plaintiffs to halt oil production, which allegedly resulted in a deprivation of property without due process of law. *Id.* at 26. The judge was dismissed from the case based on judicial immunity. *Id.* The issue the *Sparks* Court decided was whether the private defendants could "be said to have conspired under color of state law within the meaning of §1983," if a judge was immune from liability. *Id.* The *Sparks* Court found that they could, holding that to decide otherwise would essentially allow the judge's immunity to extend to private co-conspirators. *Id.* at 32.

In contrast to the argument proffered by the *Sparks* private defendants, Mr. Lusk does not assert in this case that he should be found to be immune from Plaintiff's claims because Judge Goldston has judicial immunity. Instead, Mr. Lusk submits that Plaintiff fails to state a claim against him under §1983 on two grounds. First, the Plaintiff's conspiracy claim against him is simply a recitation of the elements of conspiracy combined with speculative allegations that have no basis in fact, nor even a reference to facts from which this Court could reasonably conclude there is a remote possibility that they are true. And, second, because Mr. Lusk is immune from suit as a result of the litigation privilege (in other words, not as a result of Judge Goldston's potential immunity, but due to immunity granted to him through applicable law).

Plaintiff's reliance on *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), *Moore v. City of Poplar Bluff*, 404 F.3d 1043 (8th Cir. 2006), and *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999), is similarly misplaced. *Lugar* involved a creditor utilizing a Virginia statute to seek a prejudgment attachment of certain of the plaintiff-debtor's property, by filing an *ex parte* petition. *Id.* at 924. As the Court in *Lugar* pointed out, the analysis of claims of private actors acting under the color of state law is "necessarily fact-bound." *Id.* at 939. The Eighth and Second Circuit cases Plaintiff cites concerned situations in which police were involved in the repossessions of property and the courts sought to determine what level of participation by the police in the repossessions may convert the act into a state action. In contrast to the latter two cases, in this matter Plaintiff does not allege that Mr. Lusk was a creditor or a repossessor of private property. Instead, he (correctly) asserts in his Complaint that Mr. Lusk was, at all times during the events on which he now bases his claims, acting as an attorney representing an opposing party in litigation.

In this case, unlike in *Lugar*, Mr. Lusk filed a Petition for Contempt related to the divorce proceedings and served the Petition on Plaintiff. He did not file an *ex parte* petition. As Plaintiff acknowledges, the Judge ordered the home visit *sua sponte*, not upon Mr. Lusk's request. While Plaintiff adds the conclusory allegation that Mr. Lusk made an *ex parte* request for the home visit, he offers no proof of the same and also alleges that Judge Goldston conducted these home visits routinely. Mr. Lusk submits that the allegations contained in the Complaint and Plaintiff's argument constitute tacit recognition of an essential element of the claims against him: if Mr. Lusk did not request the home visit, there is no he cannot be found to have been acting under the color of state law. Moreover, Mr. Lusk also maintains that, if the filing of the Petition for Contempt is found to be analogous to filing an *ex parte* petition as in *Lugar*, almost any act by an attorney seeking damages or relief for his or her client would arguably be "acting under the color of state

law," potentially exposing counsel to liability for merely advocating in his or her client's best interests.

Interestingly, Mr. Lusk believes the landmark cases *Twombly* and *Iqbal* are far more analogous and instructive to the case *sub judice* than those cited by Plaintiff in support of his conspiracy claim. In *Twombly*, the Plaintiffs also asserted a conspiracy, alleging in their complaint that the defendant telecommunications companies had conspired to end competition among themselves and to stifle new competition. 550 U.S. at 550. The *Twombly* opinion, issued by Justice Souter, found that a complaint alleging conspiracy must include "enough factual matter (taken as true) to suggest that an agreement was made" before it is actionable. *Id*. at 556. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 556–557. Furthermore, "[a] statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the [conspiratorial] agreement . . ." *Id*. at 557. Conspiracy claims are valid only if facts are alleged that plausibly suggest a conspiracy; the allegation of facts that are merely consistent with a conspiracy is not sufficient to state an actionable conspiracy claim. *Id.* As a result, the Court held that Twombly's claim should be dismissed because he had failed to identify any facts that suggested illegal conspiracy as opposed to the alternative: a concurrent appraisal of the economic situation by several telecomm companies. *Id.* at 566.

Even under the most liberal reading, Mr. Lusk submits that the facts alleged by Plaintiff are nothing more than "consistent with a conspiracy." Setting aside the bald, unsupported conclusions that there was an agreement between Mr. Lusk and Judge Goldston and a "private *ex parte* request" for a home visit, Plaintiff's alleged facts, even when assumed to be true, only establish that: Mr. Lusk was aware of the Judge's routine practice of ordering home visits; Mr.

Lusk donated to the Judge's political campaign; and the Judge ordered a home visit of the Plaintiff's property during a hearing on the Petition for Contempt that Mr. Lusk filed on behalf of his client, Plaintiff's ex-wife. As in *Twombly*, Plaintiff has failed to identify facts that suggest a conspiracy instead of a much more plausible alternative: that the Judge ordered the home visit without Mr. Lusk's input or prior knowledge that she would do so. Plaintiff recognizes that Judge Goldston's practice of conducting "hearings" at residences of litigants was well-known in Raleigh County. In fact, as stated in the Complaint, another family court judge in the same circuit engaged in similar home visits because "'he believed it was proper to visit litigants' homes because a colleague had engaged in the same practice for several years.'" [Doc. 1 at ¶39]. While Plaintiff alleges, upon information and belief, that Mr. Lusk contributed to the Judge's campaign, that fact alone, even if true, does not suggest a conspiracy. It is common-place for attorneys to contribute to a judge's campaign without a corrupt motive. Moreover, there was nothing improper about Mr. Lusk filing a Petition for Contempt or contacting Plaintiff to convey a settlement offer. After all, as far as Mr. Lusk was concerned, his client had not received certain personal property that she was entitled to from the final divorce judgment. [*See* Doc. 1 at ¶18]. Taking the factual allegations together, the far more plausible alternative to Plaintiff's conspiracy claim is that Mr. Lusk was acting as a zealous advocate on behalf of his client, and not a member of a cabal of local attorneys involved in corrupt dealings with a family court judge.

In *Iqbal*, the plaintiff had alleged that then-FBI Director Robert Mueller and then-attorney general John Ashcroft personally condoned the decision to detain him and other Arab immigrants based on an unconstitutional, discriminatory policy they had adopted. 556 U.S. at 666. Iqbal alleged that Mueller and Ashcroft agreed to subject him to harsh conditions as a matter of policy, solely on account of discriminatory factors and for no legitimate penological interest; that Ashcroft

was that policy's "principal architect"; and that Mueller was "instrumental" in its adoption and execution. *Id.* at 669. The Court concluded these allegations were conclusory and not entitled to an assumption of truth. *Id.* at 681. The factual allegations that the two officials arrested and approved the arrest of Arab Muslim men alone did not plausibly suggest purposeful discrimination, given that the Arab Muslim background of the perpetrators of the September 11 attacks could unsurprisingly result in the disparate, incidental detention of Arab Muslim men. *Id.* at 682. The Court explained that a court need not accept a complaint's allegations as true when it consists of threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.* at 678. Moreover, the court may draw on its judicial experience and common sense. *Id.* at 679.

Mr. Gibson has failed to set forth sufficient facts against Mr. Lusk to state a civil rights cause of action under 42 U.S.C. §1983. His claims against Mr. Lusk are solely based on Mr. Lusk's representation of his ex-wife in judicial proceedings. Mr. Lusk's alleged participation in the search of Mr. Gibson's residence—*ordered by the Judge*—was performed in furtherance of his client's interests, not those of the State. Accordingly, Defendant maintains that Plaintiff's claims against Mr. Lusk under §1983 should be dismissed for failure to state a claim upon which relief can be granted.

### B. MR. LUSK IS ABSOLUTELY IMMUNE UNDER THE LITIGATION PRIVILEGE NOT THE PROSECUTORIAL PRIVILEGE.

Contrary to the arguments contained in Plaintiff's Response to Mr. Lusk's Motion to Dismiss, Mr. Lusk asserts the application of the litigation privilege, not a prosecutorial privilege, in seeking dismissal from this civil action. Further, without citing a single authority, Plaintiff concludes that the litigation privilege is inapplicable. [Doc. 17 at Page 7 of 10 PageID #: 286]. For these reasons, and those set forth in Mr. Lusk's Motion to Dismiss [Doc. 13] and Memorandum of

Law in Support [Doc. 14], Mr. Lusk is entitled to absolute immunity, and Plaintiff's claims against

him should be dismissed.

Plaintiff's argument that Mr. Lusk relies upon the absolute immunity belonging to

prosecutor in seeking dismissal is at best misguided and at worst disingenuous. Mr. Lusk has not

represented that he was serving as a prosecutor at the home visit. Rather, he was, at all times, a

private attorney representing his client. Mr. Lusk's Motion to Dismiss does cite to United States

Supreme Court, Fourth Circuit, or Second Circuit Courts of Appeals 42 U.S.C. § 1983 cases in

which the Courts have universally recognized the absolute immunity for government attorneys.

*See Imbler v. Pachtman*, 424 U.S. 409, 422–424, 96 S. Ct. 984, 991–992, 47 L. Ed. 2d 128, 139–

140 (1976); *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018); *Barrett v. United States*, 798 F.2d

565, 571-73 (2nd Cir. 1986). As he explains in his Motion, these decisions are relevant to this

matter "because, as the United States Supreme Court explained in *Briscoe v. LaHue*, 460 U.S. 325,

103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983), the litigation privilege at common law protected *all*

participants in the court system, and private attorneys were treated no differently from judges,

government lawyers and witnesses." [Doc. 14 at Page 9 of 14 PageID #: 245] (emphasis added).

The *Briscoe* Court further  noted that "all persons—governmental or *otherwise*—who were

integral parts of the judicial process" were afforded absolute immunity from liability because of

the need to ensure "that judges, *advocates*, and witnesses can perform their respective functions

without harassment or intimidation." *Id.* at 335, quoting *Butz v. Economou*, 438 U.S. 478, 512, 98

S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (*emphasis added*; internal quotation marks omitted). It is his

role as an advocate for his client, not as a prosecutor, that provides Mr. Lusk with entitlement to

the litigation privilege in this case. Plaintiff's claim that the home visit was improper does not

somehow invalidate Mr. Lusk's role as an attorney. Indeed, Mr. Lusk's alleged conduct was

inextricably tied to a judicial proceeding given that this home visit was "*sua sponte*" ordered by the Judge during a hearing on Mr. Lusk's <u>client's</u> Petition for Contempt.

Moreover, as pointed out in the Motion to Dismiss, the Petition for Contempt action is still ongoing, and Mr. Lusk is still counsel for Mr. Gibson's ex-wife in that matter. Plaintiff's improper collateral attack is exactly the sort of maneuvering the litigation privilege is designed to prevent. The claims against Mr. Lusk, he maintains, should therefore be dismissed.

**KYLE LUSK,**

**By Counsel,**

/s/ Arie M. Spitz
Arie M. Spitz (WVSB # 10867)
Kevin A. Nelson (WVSB# 2705)
Jason L. Holliday (WVSB # 12749)
DINSMORE & SHOHL LLP
707 Virginia Street, East, Suite 1300
P.O. Box 11887
Charleston, West Virginia 25339-1887
Telephone: (304) 357-0900
Facsimile: (304) 357-0919
arie.spitz@dinsmore.com
kevin.nelson@dinsmore.com
jason.holliday@dinsmore.com

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

MATTHEW GIBSON,

     **Plaintiff,**

v.                                         **Civil Action No. 5:21-CV-00181**

LOUISE E. GOLDSTON, et al.,

     **Defendants.**

## CERTIFICATE OF SERVICE

I, Arie M. Spitz, counsel for Defendant Kyle Lusk, do hereby certify that I have filed a true copy of the foregoing ***Defendant Kyle Lusk's Reply in Support of His Motion to Dismiss*** this 10th day of May 2021 with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the below listed CM/ECF participants:

John H. Bryan
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
*Counsel for Plaintiff*

J. Victor Flanagan
Kevin J. Robinson
PULLIN FOWLER FLANAGAN BROWN & POE
252 George Street
Beckley, WV 25801
*Counsel for Defendants*
*County Commission of Raleigh County, Jeff McPeake,*
*Brian White and Bobby Stump*

Jennifer E. Tully
Adam K. Strider
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
P.O. Box 3710
Charleston, WV 25337-3710
*Counsel for Defendant Louise E. Goldston*

/s/ Arie M. Spitz
Arie M. Spitz (WVSB # 10867)