IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

        Plaintiff,

vs.                                  Civil Action No. 5:21-cv-00181
                                  Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

        Defendant.

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT
LOUISE E. GOLDSTON'S MOTION TO DISMISS**

Now comes the Plaintiff, by and through counsel, John H. Bryan, pursuant to Rule 12(b)

(6) of the Federal Rules of Civil Procedure, and pursuant to this Court's December 3, 2021 Order

directing Plaintiff and Defendant Goldston to file supplemental briefs in this matter, and provides

the following supplemental arguments in support of his request that this Court deny Defendant

Goldston's motion to dismiss:

## I.      THE WEST VIRGINIA SUPREME COURT OPINION

On November 18, 2021, the West Virginia Supreme Court of Appeals issued their

published opinion in the case of In the matter of Goldston, No. 20-0742 (2021), censuring and

fining Defendant Goldston for her serious misconduct. The central issue in both Goldston and

the § 1983 action currently *sub judice*, is the allegation that a Family Court judge, under color of

law, personally engaged in a search and seizure of the Plaintiff's residence in violation of state law and federal constitutional rights. The Court in Goldston established conclusively and categorically that the Defendant's conduct was, as a matter of law, "executive" in nature, and expressly not "judicial." Syllabus Point 2 held that, "The West Virginia Constitution forbids a judicial officer to participate in a search because a search is an exercise of executive power." Moreover, Syllabus Point 3 held that the underlying disciplinary allegations against Defendant Goldston were proven under the high standard of proof by clear and convincing evidence.

Ultimately, the Goldston established, as a matter of law, that the Defendant "led a *search* of the [Plaintiff's] residence, not a 'judicial view,' and that, in so doing, she exercised executive powers forbidden to her under the West Virginia Constitution." Id. at 2 (emphasis original). The Court also took issue with the "manner in which [Judge Goldston] conducted the search," labeling her actions "serious misconduct," ordering that she be publicly censured and fined $1,000. Id. The Court expressly rejected Judge Goldston's "attempt to reframe her conduct" as judicial.[1] Likewise, this Court is compelled to do the same, due to the binding application of Goldston on the instant proceedings, as will be discussed in greater detail below.

II.    THE APPLICATION OF JUDICIAL IMMUNITY

Judges may not properly assert judicial immunity just by virtue of being a defendant based on allegations of conduct performed while acting as a judge. Judicial immunity extends only to a judge's judicial acts and does not encompass purely administrative actions, even if they "may be essential to the very function of the courts." Forrester v. White, 484 U.S. 219, 227-230,

_____

[1] Id. at 2 ("After considering the record and the parties' written and oral arguments, we reject the judge's attempt to reframe her conduct.").

108 S.Ct. 538, 544-546, 98 L.Ed.2d 555, 565-567 (1988). Selecting a jury pool; promulgating an attorney code of conduct; enforcing such a code; and hiring and firing persons under the judge's supervision have all been held to be administrative acts and hence without judicial immunity. Id. at 228-29, 108 S.Ct. at 544-45, 98 L.Ed.2d at 565-67; Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D. Pa. 2007). For instance, actions taken by a judge in his capacity as a member of the county prison board were not judicial acts, and thus not subject to judicial immunity. Goldhaber at 706; citing Padgett v. Stein, 406 F.Supp. 287, 305 (M.D.Pa. 1975) ("'In the performance of their duties on the prison board, the county judges are not acting within the scope of their *judicial* jurisdiction. They are not involved in a judicial function and they are not exercising judicial power.') (emphasis in original)."). An act that is administrative or otherwise non-judicial does not become judicial merely because the person performing that act happens to be the judge assigned to a particular individual's case." Id at 707.

Absolute judicial immunity is lost only when the judge either did not perform a judicial act or when the judge "acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356– 57 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1872). To determine whether the judge performed a "judicial act," courts consider whether the judge engaged in action normally performed by a judge, and whether the parties dealt with the judge in her judicial capacity. Mireles, 502 U.S. at 12.

In Archie v. Lanier, 95 F.3d 438, 441 (6th Cir. 1996) the Court examined a claim of judicial immunity in light of allegations of sexual misconduct taken by a judge against employees and litigants who encountered the defendant judge in otherwise judicial settings. The Court determined that, "[w]hether [Judge] Lanier's actions were 'judicial acts' must be answered

3

by looking at the 'nature' and 'function' of the act, not the 'act itself.'" Id. at 441; citing Mireles at 13, 112 S.Ct. at 288 (quoting Stump, 435 U.S. at 362, 98 S.Ct. at 1107-08). It's less important that a defendant asserting judicial immunity is a "judge," than it is that they are performing an act of the nature normally performed by a judge:

> That is to say, "we look to the particular act's relation to a general function normally performed by a judge" to determine whether the action complained of was indeed a judicial act. Id. Ultimately, it is the "nature" of the function performed, rather than the identity of the person who performed it, that informs a court's immunity analysis. Id. (quoting Forrester, 484 U.S. at 229, 108 S.Ct. at 545).

> This court explained that the analytical key "in attempting to draw the line" between functions for which judicial immunity attaches and those for which it does not is the determination whether the questioned activities are "truly judicial acts" or "acts that simply happen to have been done by judges." It is the nature of the function involved that determines whether an act is "truly" judicial. Sparks v. Character and Fitness Comm. of Kentucky, 859 F.2d 428, 432 (6th Cir.1988) (citations omitted), cert. denied, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989).

Archie v. Lanier, 95 F.3d 438, 441 (6th Cir. 1996). The burden is on the judge to justify the assertion of such immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 273-75, 113 S.Ct. 2606 2616, 125 L.Ed.2d 209 (1993)."

In Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D. Pa. 2007), the Western District of Pennsylvania provided an illustration which is analogous to the present circumstances:

> By way of illustration, consider a case where a judge presides at a murder trial and upon the defendant's conviction sentences him to death. Even though the judge's actions up to that point are undisputably judicial, and even though the defendant is clearly within the judge's jurisdiction, if the judge then shoots and kills the defendant himself the judge's act would be an undisputably non-judicial action from whose consequences the judge would certainly not be immune.

Id. at 707. Another example of non-judicial acts is the case of Zarcone v. Perry, 572 F.2d 52 (2nd Cir. 1978) cert. denied, 439 U.S. 1072 (1979), where the Second Circuit upheld an award of

punitive damages against a judge who ordered a nearby coffee vendor to be handcuffed and ordered law enforcement to subject him to "pseudo-official inquisition" because the judge did not like his coffee.

Obviously shooting and killing a litigant is dramatically more severe than performing a search and seizure at the home of a litigant. However, the logical conclusions must be the same in both scenarios. Even though Judge Goldston's actions up to the point on March 4, 2020 were undisputedly judicial up to a point, once she left the judicial branch and trespassed into the dominion of the executive branch, her actions at that point, and thereafter, were undisputedly non-judicial actions. Pursuant to the Goldston opinion, they were executive in nature, and therefore judicial immunity must be denied.

### III.    JUDGE GOLDSTON IS NOT ENTITLED TO JUDICIAL IMMUNITY

In her memorandum in support of her motion to dismiss, Judge Goldston asserts judicial immunity, which is not surprising under the circumstances. However, as the State Supreme Court opinion demonstrates, this is one of those unique scenarios where judicial immunity must be denied to a judicial defendant. In order for judicial immunity to apply, Defendant Goldston must "reframe" her conduct so as to come within the scope of judicial immunity. In the matter of Goldston, No. 20-0742 (2021) established as a matter of law, however, that Defendant Goldston's "serious misconduct," consisting of a "search" of Plaintiff's residence, falls outside the ambit of judicial immunity protection as a non-judicial act.

In her memorandum, Judge Goldston argues that, "The facts of this case are a direct allegory to" the facts of Mireles v. Waco, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).[2]

_____

[2] Goldston Mem. at 8.

5

Reliance on <u>Mireles</u> requires that Judge Goldston's conduct remain wholly judicial in nature. The Court explained that in order to determine whether an act is judicial, "we look to the particular act's relation to a general function normally performed by a judge," which in <u>Mireles</u> consisted of "the function of directing police officers to bring counsel in a pending case before the court." <u>Id</u>. at 12-13. Defendant Goldston argues that just because she exited the courtroom on March 4, 2020, that she was still acting as a judge, because the "entire exercise was the adjudication of a motion in a divorce case, even if done in an unorthodox or arguably impermissible manner."[3] Defendant Goldston argues that she "would not be immune from liability if she had rear-ended the Plaintiff's car at a stoplight, because she is not acting as a judge in that circumstance."[4]

Utilizing the Defendant's logic, her example of a car wreck begs the question of whether she would be immune from liability had she rear-ended the Plaintiff's car on the way to his home on March 4, 2020? Such a position would require the application of absolute judicial immunity against any liability whatsoever, for any action whatsoever, so long as the judicial officer claims subjectively to be in the process of adjudicating the claims of a litigant. Such a position would effectively abolish the long-existing exceptions to the application of judicial immunity for any plaintiff who was a litigant before the defendant judge, which of course would be contrary to binding Supreme Court holdings.

Judge Goldston also argues that she was acting in a judicial capacity by "allegedly prohibiting the Plaintiff, or those at his direction, from video recording the events . . . ." and that, "In fact, the West Virginia Rules of Practice and Procedure for Family Courts expressly prohibit

---

[3] <u>Id</u>.

[4] <u>Id</u>.

persons who are not court officials from recording judicial proceedings."[5] Once again, Defendant Goldston attempts to "reframe" her conduct, even refusing to admit that she was caught on video prohibiting the Plaintiff from recording the incident. In any event, the Goldston opinion is categorically binding on all factual and legal issues addressed therein.

In the matter of Goldston, No. 20-0742 (2021) conclusively establishes that Judge Goldston did in-fact prohibit recording, as well as the fact that so doing was an egregious act of misconduct. The Court wrote that, "Judge Goldston . . . indicated that if they did not turn off their phones and stop recording she would take the [Plaintiff], or perhaps both he and his girlfriend, to jail," and that "Judge Goldston, herself, made no arrangements to record what went on inside the home (or outside the home)." Id. at 4. The Court ultimately held that, "over [Plaintiff's] strenuous objections, [Defendant Goldston] directed that he stop recording the incident, and began searching for items on the list of items he was to produce" and that, "[s]uch an invasion of the [Plaintiff's] home was an egregious abuse of process." Id. at 23.

### A.      Judge Goldston's actions were not "Judicial" in nature

The State Supreme Court conclusively held in In the matter of Goldston, No. 20-0742 (2021) that Judge Goldston's actions, as alleged in the Complaint, were not judicial in nature, but rather wholly executive. The Court found by clear and convincing evidence that Judge Goldston engaged in a "*search*," rather than a "*view*." The Court wrote that, "Judge Goldston did not go to the property to *observe* the ex-husband's house; she went there to locate and seize certain of its contents - pictures, DVDs, and other items of personal property." Id. at 14 (emphasis original). The Court concluded that her conduct was executive in nature, rather than judicial. "Searches are

_____

[5] Goldston Mem. at 8-9.

an activity of the executive department." Id. at 16; citing State ex rel. Parma Cmty. Gen. Hosp. v. O'Donnell, 2013-Ohio-2923, ¶ 7 (stating that "searches are executive in nature.").

The Court found that Judge Goldston was acting in an executive law enforcement capacity on March 4, 2020, even though she was vested with no executive enforcement law enforcement authority. "Indeed, searches are so quintessentially executive in nature that even a judge who participates in one acts 'not * * * as a judicial officer, but as an adjunct law enforcement officer.'" Id. at 16; quoting State ex rel. Hensley v. Nowak, 52 Ohio St. 3d 98, 99, 556 N.E.2d 171, 173 (1990) (per curiam) (quoting Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 327 (1979)) (holding that a writ of prohibition would not issue to restrain administrative searches because they are neither judicial nor quasi-judicial acts). The Goldston Court held in no uncertain terms that Judge Goldston's search was an impermissible exercise of executive powers under the State Constitution:

> Under our system of government, judges may not exercise executive powers. The West Virginia Constitution declares that "[t]he legislative, executive and judicial departments *shall be separate and distinct*[.]" W. Va. Const. art. V, § 1 (emphasis added). The Constitution further specifies, in unmistakable terms, that no department "shall exercise the powers properly belonging to either of the others" and forbids "any person [to] exercise the powers of more than one of them at the same time[.]" In light of these clear prohibitions, we hold that the West Virginia Constitution forbids a judicial officer to participate in a search because a search is an exercise of executive power. W. Va. Const. art. 5, § 1. Because Judge Goldston plainly engaged in such a search, we find that the so-called "view" was improper.

Id. at 17-18 (citations omitted).

### B.     The Goldston Opinion applies to categorically estop and preclude the Defendant's assertion of qualified immunity

Due to the fact that Defendant Goldston was already provided with a full and fair opportunity to litigate the factual and legal issues arising from her actions of March 4, 2020 in

8

the underlying judicial disciplinary proceedings, she is now categorically barred from further challenging those factual and legal findings litigated therein. The Complaint's allegations, as well as the Defendant's ensuing assertion of judicial immunity in her motion to dismiss, consist of substantially identical factual and legal issues as were decided in the <u>Goldston</u> opinion, and to which the Defendant is now bound.

Under the full-faith and credit statute, 28 U.S.C. § 1738, federal courts in § 1983 actions must give state court judgments the same preclusive effect they would receive in state court under state law. <u>San Remo Hotel v. San Francisco</u>, 545 U.S. 323, 337–38 (2005); <u>Migra v. Warren City Sch. Dist.</u>, 465 U.S. 75, 81 (1984); <u>Allen v. McCurry</u>, 449 U.S. 90, 94–95 (1980). *See also* <u>Haring v. Prosise</u>, 462 U.S. 306, 313–14 (1983). This principle controls so long as the federal litigant against whom preclusion is asserted had a full and fair opportunity to litigate his federal claims in state court. A full and fair opportunity to be heard requires only that state judicial procedures meet minimal procedural due process requirements. <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 480–81 (1982); <u>Allen</u>, 449 U.S. at 95. The full-faith and credit statute applies even to claims that could have been, but were not, litigated in the state court proceeding, if state preclusion law encompasses the doctrine of claim preclusion. <u>Migra v. Warren City Sch. Dist.</u>, 465 U.S. 75, 83–85 (1984).

In 1980, the U.S. Supreme Court applied the doctrines of *res judicata* and *collateral estoppel* to Section 1983 actions. *See* <u>Allen v. Curry</u>, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, even prior to <u>Allen</u>, the Fourth Circuit had already established the same holding. *See* <u>Rimmer v. Fayetteville Police Dept.</u>, 567 F.2d 273 (4th Cir., 1977) ("There is nothing new in the concept that full litigation of an issue in a criminal proceeding forecloses

subsequent relitigation of the issue in a civil proceeding when resolution of the issue was essential to the conviction."); *See also* <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 85 (1984) ("We hold, therefore, that petitioner's state-court judgment in this litigation has the same claim preclusive effect in federal court that the judgment would have in the Ohio state courts.") (cited by <u>Gilliam v. Sealey</u> No. 18-1366, No. 18-1402 (4th Cir., 2019)). It is well established that a prior criminal judgment or decree may be used to establish *prima facie* all matters of fact and law adjudicated in the criminal litigation. *See* <u>Emich Motors Corporation v. General Motors Corporation</u> 8212 1951, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). "Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." <u>In re McNallen</u>, 62 F.3d 619, 624 (4th Cir. 1995).

Though Defendant Judge Goldston's underlying state action wasn't a criminal case, which tends to be scenario when preclusion is applied in Section 1983 cases, the application is the same here. It is well established law in West Virginia that the Supreme Court of Appeals of West Virginia conducts an independent review of the record in judicial disciplinary cases and is the final arbiter in all disciplinary cases. *See* <u>In re Browning</u>, 192 W. Va. 231, 452 S.E.2d 34 (1994) and Syl. Pt. 3, <u>Committee on Legal Ethics v. Blair</u>, 174 W. Va. 494, 327, S.E.2d 671 (1984). "In a disciplinary proceeding against a judge, in which the burden of proof is by clear and convincing evidence, where the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the facts so stipulated." Syl. Pt. 4, <u>Matter of Starcher</u>, 202

W. Va. 55, 501 S.E.2d 772 (1998).[6] The West Virginia Supreme Court's review in such matters is "plenary" and "independent." Matter of Starcher, 202 W. Va. 55, 60, 501 S.E.2d 772, 777 (1998).

The claims litigated in the underlying judicial disciplinary proceedings are mostly identical to the claims currently *sub judice*. At issue in the state proceeding was both the factual and legal allegations which formed the basis of the formal "Statement of Charges" issued against Defendant Goldston on September 18, 2020 by the Judicial Investigation Commission.[7] The Statement of Charges described Judge Goldston's longstanding "practice of visiting homes of litigants" and her actions on March 4, 2020 with respect to the Plaintiff.[8] As the Court noted, on September 30, 2020, "Judge Goldston signed an agreement with Judicial Disciplinary Counsel" admitting the allegations of fact set forth in the formal statement of charges, and further admitting that, "by engaging in such conduct, she had violated" numerous Rules of the Code of Judicial Conduct.[9] The Court noted that, "Judge Goldston agreed [in her sworn statement to Judicial Disciplinary Counsel] that the task of enforcing her orders is an 'executive branch' function, and she knew that she could dispatch law enforcement to search for and seize property that a party retained in violation of her order," but that "[s]he simply believed that this method was ineffective…."[10] Moreover, the Court observed that Defendant Goldston "admitted to

---

[6] *See also* Syl. Pt. 5 of Goldston.

[7] Goldston at 7.

[8] Id.

[9] Id. at 8.

[10] Id. at 6-7.

improperly putting herself in the role of litigant [i.e., a litigant who had the burden of proof in a contempt proceeding]."[11]

The issues in the disciplinary proceedings did not go uncontested. In <u>Goldston</u>, the Court noted that Judge Goldston argued that, though she "remains bound by her prior statements of fact," that "she contends that the parties remain free to "argue questions of law[:]"

> She denies that the Judicial Investigation Commission ever charged her with, or that she has ever confessed to, any constitutional violations. On the contrary, she contends that "[s]ubsequent research . . . revealed a body of law that supports" her actions. In particular, she claims that she had "inherent authority to conduct an onsite visit" and that "view[ing] the division of property" allowed the ex-husband to "purge his contempt." She contends that, "[u]nlike the execution of a search warrant, the view was conducted with judicial oversight. Therefore, it was not per se unreasonable." Ultimately, Judge Goldston believes that her conduct was lawful and that, if she is mistaken, her mistake was error, not an ethical violation. She urges the Court to "clarify the law and either affirm the ruling of the [Judicial Hearing Board] or as the final arbiter conclude that there [wa]s no wrongdoing[.]"

<u>Id</u>. at 12-13. Thus Defendant Goldston had a full and fair opportunity to address all issues pertaining to the  constitutional validity of her actions taken at the Plaintiff's residence on March 4, 2020, including the specific issue of whether such actions were judicial in nature, or not. She did in fact litigate those issues, represented by counsel.[12] Thereafter, as the final arbiter of such issues in the context in which they arose, the <u>Goldston</u> Court repudiated the Defendant's position, instead holding conclusively that she indeed engaged in a search and seizure of the Plaintiff's residence, as defined by well established federal Fourth Amendment jurisprudence.[13]

_____

[11] <u>Id</u>. at 8.

[12]

[13] *See* <u>Goldston</u> at 15-17; citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968); <u>Kyllo v. United States</u>, 533 U.S. 27, 32 n.1 (2001); <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 327 (1979); United States v. Barnes, 895 F.3d 1194, 1202 (9th Cir. 2018); United States v. Clyburn, 806 F. Supp. 1247, 1252 (D.S.C. 1992), aff'd, 24 F. 3d 613 (4th Cir. 1994).

Regarding the West Virginia State Constitution, the Court expressly concluded that it "forbids a judicial officer to participate in a search because a search is an exercise of executive power."[14]

The Court explicitly condemned Defendant Goldston for the actions which are the subject of the Complaint:

> As we have stated herein, Judge Goldston's conduct constituted a search, rather than a mere view, of the ex-husband's home. The parties appeared in court for a hearing before Judge Goldston. Undoubtedly, the ex-husband could not have anticipated that the hearing would proceed to an unannounced invasion of the sanctity and privacy of his home. Regardless of whether the ex-husband had failed to provide belongings he was previously directed to provide, Judge Goldston failed to use the appropriate tools available to her under the law to address such failure because she felt such procedures were ineffective. Instead, she, along with her bailiff, the ex-wife, and the ex-wife's attorney, proceeded to enter the ex-husband's home, over his strenuous objections, directed that he stop recording the incident, and began searching for items on the list of items he was to produce. Such an invasion of the ex-husband's home was an egregious abuse of process.
>
> Moreover, Judge Goldston clearly left her role as an impartial judicial officer and participated in an executive function when she entered the ex-husband's home to oversee the search….

Goldston at 23. Any attempt by Defendant Goldston to subsequently claim in this civil action, that she did not commit state and federal constitutional violations against the Plaintiff, or that in so doing she was engaging in an alleged judicial act, is effectively an inappropriate collateral attack on the State Supreme Court judgment.

### C.      The Rooker-Feldman Doctrine bars the Defendant from collaterally attacking the State Supreme Court Opinion

The so-called Rooker-Feldman Doctrine, named after the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), provides that a federal district court does not have jurisdiction to

_____

[14] Id. at 17; citing W. Va. Const. art. V, § 1.

overturn a state court judgment. To the extent that Defendant Goldston disagrees with the West Virginia Supreme Court's rulings in <u>In the matter of Goldston</u>, No. 20-0742 (2021) and desires to resubmit the issues for federal court adjudication, she is limited solely to U.S. Supreme Court review, as only the Supreme Court has federal appellate jurisdiction over state court judgments.[15] The Supreme Court has recognized that the *Rooker–Feldman* doctrine may apply even when the claim asserted in federal court was not determined in the state court proceeding if that claim was "inextricably intertwined" with the state court judgment. <u>Exxon Mobil</u>, 544 U.S. at 286 n.1 (citing <u>D.C. Ct. of App. v. Feldman</u>, 460 U.S. 462, 483 n.16 (1983)).

**D.     As a matter of law, Defendant Goldston violated the Code of Judicial Conduct and the underling factual allegations**

The Court concluded in <u>In the matter of Goldston</u>, No. 20-0742 (2021) that Judge Goldston's actions, as proven by clear and convincing evidence, "violated Rules 1.1, 1.2, 1.3, 2.2. 2.4(A), 2.4(B), and 2.5 of the Code of Judicial Conduct and that she did, in fact, violate those rules." <u>Id</u>. at 18. Said rules consisted of the following:

(a) Rule 1.1, which states that "[a] judge shall comply with the law, including the West Virginia Code of Judicial Conduct";
(b) Rule 1.2, which states that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety";
(c) Rule 1.3, which states that "[a] judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so";
(d) Rule 2.2, which states that "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially";
(e) Rule 2.4(A), which states that "[a] judge shall not be swayed by public clamor or fear of criticism";

---

[15] 28 U.S.C. § 1257 (2006).

(f) Rule 2.4(B), which states that "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment"; and

(g) Rule 2.5, which states that "[a] judge shall perform judicial and administrative duties, competently and diligently . . . [and] shall cooperate with other judges and court officials in the administration of court business."

Id. at 8-9. The Court also noted that, among other factual admissions, Defendant Goldston "admitted to improperly putting herself in the role of litigant [i.e., a litigant who had the burden of proof in a contempt proceeding]." Id. at 7-8. Such findings by the Court, establish as a matter of law that Defendant Goldston's actions on March 4, 2020 were unequivocally not *judicial* in nature; that they consisted of serious misconduct and ethical violations; and that they are not an allegory to Mirales, as Defendant argues.

**CONCLUSION**

Defendant Judge Goldston is categorically estopped and precluded from re-litigating the factual and legal issues decided by the West Virginia Supreme Court of Appeals in In the matter of Goldston, No. 20-0742 (2021), which held that the March 4, 2021 search and seizure performed by Defendant Goldston was a non-judicial, executive law enforcement action, performed in violation the state and federal constitutions, as well as an egregious act of ethical misconduct under the Code of Judicial Conduct. She is barred from asserting judicial immunity in this action due to the fact that doing so would require this Court to determine the issue of whether her actions taken on March 4, 2020 at the Plaintiff's residence were "judicial" in nature, which has already been decided by Goldston. This Court is consequently without jurisdiction to review issues covered by Goldston - only the United States Supreme Court could do so.[16]

---

[16] Upon information and belief, there has been no indication that Defendant intends to petition for appeal to the U.S. Supreme Court.

Moreover, the Plaintiff is arguably entitled to judgment as a matter of law on many, if not all, of the constitutional claims asserted in the Complaint, for the same reasons, which further weakens the Defendant's protestations.

Even without the existence of the Goldston opinion, the allegations in the Complaint must be taken as true when resolving a motion to dismiss. The Complaint herein is 38 pages long and highly-detailed, specifically addressing and incorporating the factual and legal allegations asserted in the judicial disciplinary action,[17] including the Code of Judicial Conduct, as well as addressing judicial immunity directly.[18] Taken as true, even without the Defendant being precluded from re-asserting her arguments, the motion to dismiss must be denied pending further development of the record and dispositive motions. Similarly, the Western District of Missouri just days ago denied a motion to dismiss in another judicial immunity case, also involving a family court judge, ruling that the assertion of judicial immunity could not be resolved by a motion to dismiss where the complaint alleged a non-judicial act.[19] Defendant Goldston's motion should likewise be denied.

_____

[17] See Complaint at ¶ ¶ 30-40, 84, 86.

[18] See Complaint at ¶ ¶ 60, 73, 87, 99 ("Defendant Goldston engaged in nonjudicial actions which were not taken in a judicial capacity. She engaged in functions and behaviors which are not normally performed by a judge and which are wholly outside the expectations of litigants in Family Court. Defendant Goldston's personal direction of, and personal participation in, the violation of Plaintiff's Fourteenth Amendment rights as discussed herein in detail, consisted of an executive act, rather than a judicial act in nature. As a consequence, Judge Goldston does not enjoy judicial immunity for her actions taken on the property of the Plaintiff on March 4, 2020, as alleged herein in detail. See Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).").

[19] See Rockett v. Hon. Eric Eighmy, Case No. 6:21-cv-03152-MDH (W.D. MO) at 4 ("The allegations contained in the complaint are that the judge acted without jurisdiction and outside his judicial role when personally taking the children to jail, then subsequently ordering them picked up in Louisiana, when there were no judicial proceedings pending that would allow for this judicial sanction. Whether Plaintiff will be able to ultimately prevail is a question for another day. However, here, based on the allegations contained in the pleadings Plaintiff has stated a claim that judicial immunity may not apply and certainly a claim that cannot be resolved by a motion to dismiss.").

MATTHEW GIBSON,
By Counsel


/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

MATTHEW GIBSON,

       Plaintiff,

vs.                           Civil Action No. 5:21-cv-00181
                                     Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,
KYLE LUSK, individually,

       Defendant.

## CERTIFICATE OF SERVICE

       I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT LOUISE E.

GOLDSTON'S MOTION TO DISMISS has been served upon counsel of record by using the

CM/ECF System, this the 17th day of December, 2021 and addressed as follows:

Jennifer E. Tully, Esq.               J. Victor Flanagan, Esq.
Adam K. Strider, Esq.              Kevin J. Robinson, Esq.
Bailey & Wyant, PLLC             Pullin Fowler Flanagan, Brown & Poe, PLLC
500 Virginia Street, East, Suite 600     252 George Street
PO Box 3710                    Beckley, WV 25801
Charleston, WV 25337-3710        *Counsel for Raleigh County Defendants*
*Counsel for Louise E. Goldston*

Arie M. Spitz, Esq.
Kevin A. Nelson, Esq.
Jason L. Holliday, Esq.
Dinsmore & Shohl, LLP
707 Virginia Street, East, Suite 1300

18

Charleston, WV 25339-1887
*Counsel for Kyle Lusk*

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com