# EXHIBIT - B

Page 22

1  Mr. Gibson's home?
2      A. Correct.
3      Q. Also on March 4, 2020, you were
4  aware of the fact that Judge Goldston was not
5  a law enforcement officer, right?
6      A. Correct.
7      Q. You were aware at all times that
8  she was in fact a family court judge?
9      A. Correct.
10     Q. You were also aware of the fact on
11 March 4, 2020, that -- you were aware that
12 judges don't search homes, right?
13     A. No. I was not aware of that.
14     Q. Okay. So on March 4, 2020, you
15 were not aware that judges do not search
16 homes?
17     A. That's correct.
18     Q. Okay. At some point did you become
19 aware that judges do not search homes?
20     A. After this case was brought up -- I
21 had no idea if family court judges could go
22 in homes or not. The process of obtaining a
23 search warrant, as far as my history as a
24 police officer goes, is if we need a search

Page 23

1  warrant, we go to a judge, they issue the
2  search warrant and then we go back to home.
3  So with the judge being with me, I felt as if
4  that base had been covered so to speak.
5      Q. Okay. But you did not request that
6  Judge Goldston issue a search warrant for
7  Mr. Gibson's home, right?
8      A. I did not.
9      Q. I mean, you weren't involved in
10 that process at all? You were just the
11 bailiff?
12     A. Correct.
13     Q. So you accompanied her on that day
14 to Mr. Gibson's home because she told you to?
15     A. Right.
16     Q. During your time at the Beckley
17 Police Department, including supervising
18 other police officers, did you ever
19 experience a judge personally searching any
20 property?
21     A. No. I was always involved with
22 criminal cases, never civil cases.
23     Q. But you were aware of the fact that
24 on March 4, 2020, that the process that you

Page 24

1  were familiar with -- in your experience as
2  far as obtaining search warrants and
3  executing search warrants -- there was no
4  process like that followed on March 4, 2020?
5      A. No. I had -- like I said, this was
6  a civil case that I had no experience in.
7      Q. Okay. So you were confused or
8  unsure about what the law with family court
9  as opposed to a criminal investigation; is
10 that right?
11     A. Yes. By having the judge with
12 me -- I didn't feel it necessary for me to go
13 to a judge and get a search warrant if I had
14 a judge with me.
15     Q. In your law enforcement career, did
16 you ever in lieu of getting a search warrant
17 just take a judge with you to the property?
18     A. No.
19     Q. Had you ever heard of anyone else
20 doing that?
21     A. No.
22     Q. But it was just your assumption at
23 the time that it might be okay because the
24 judge was with you?

Page 25

1      A. I felt as if we recessed from the
2  courtroom and re-adjourned at the home.
3  Therefore, I -- I didn't need another judge
4  -- I mean, the judge was there.
5      Q. There was no emergency situation
6  occurring inside Mr. Gibson's home on
7  March 4, 2020, right?
8      A. Correct.
9      Q. So the reason that the judge wanted
10 inside was solely to search for property?
11         MS. TULLY: Objection.
12     Q. If that's your recollection?
13     A. I don't remember us going there to
14 search. I remember us going there to
15 retrieve items that were agreed that were
16 going to be taken from him and given to her.
17     Q. You were going in his house to look
18 for items?
19     A. To obtain what he said he did have
20 and was going to provide her.
21     Q. So you were going inside Mr.
22 Gibson's house to retrieve items, correct?
23     A. Correct.
24     Q. And not to -- not because there was