# EXHIBIT F

**In the Matter of:**

MATTHEW GIBSON

vs

LOUISE E. GOLDSTON

JEFF MCPEAKE

*February 23, 2022*



5010 Dempsey Drive
Cross Lanes WV 25313
304-415-1122

Page 46

1  A. Yes.
2  Q. Would it be fair to say that you
3  did more inside Mr. Gibson's house than just
4  ensure the judge's safety, but that you to
5  some extent participated jointly with the
6  judge by documenting what was happening
7  inside?
8      MS. TULLY: Objection.
9  Q. Let me -- strike that. Let me
10 rephrase that question. It was pretty
11 sloppy.
12     Would you agree with me that you
13 did more on March 4, 2020, than merely
14 protect the judge's safety or guard the judge
15 inside Mr. Gibson's house?
16 A. My role there is protecting the
17 judge as I stated. And all of our hearings,
18 all of them, 100 percent of them, are
19 videotaped. I felt as if we were still in a
20 courtroom setting. So I felt that it would
21 be a good idea to video as much as I could.
22 My battery was low. And I would have
23 videotaped start to end.
24 Q. But you weren't -- you weren't just

Page 47

1  taking surveillance footage, you were
2  documenting --
3  A. I was -- I was documenting what
4  people were saying and what people were
5  taking as much as I could.
6  Q. Okay. But when you are acting as a
7  bailiff in the courtroom, I mean, you're not
8  getting out your cell phone and
9  documenting --
10 A. Did not.
11 Q. -- exhibits or anything like that?
12 A. No. The courtroom facilities do
13 that for me. I don't have -- I am not.
14 Q. And that -- I mean, that, to be
15 fair, doesn't have anything to do with Judge
16 Goldston's safety -- personal safety, does
17 it?
18     MR. ROBINSON: Object to the
19 form.
20     Do you understand the question?
21 A. If you could rephrase it maybe.
22 Q. Your actions in documenting with
23 your personal cell phone the inside of
24 Mr. Gibson's house, that goes beyond just

Page 48

1  guarding Judge Goldston's personal safety,
2  right?
3  A. I would say yes.
4  Q. I mean, that is more akin to
5  helping Judge Goldston locate and retrieve
6  items of personal property inside Mr.
7  Gibson's house?
8  A. No.
9      MS. TULLY: Objection.
10 A. I would not agree with that, no.
11 Q. You were documenting items of
12 personal property inside Mr. Gibson's house
13 that was being retrieved by other people?
14 A. More of recording what was being
15 said or not said, taken or not taken. Trying
16 to keep an accurate record of what was going
17 on inside the home.
18 Q. When you took photographs with your
19 personal cell phone of firearms during a
20 prior incident with Judge Shuck, that was not
21 done in the interest of Judge Shuck's safety,
22 was it?
23 A. It was not.
24 Q. Taking photographs of somebody's

Page 49

1  firearms had absolutely nothing to do with
2  ensuring or protecting Judge Shuck's safety?
3  A. Correct.
4  Q. In fact, it was literally
5  documenting what was being taken out of that
6  residence?
7  A. Correct.
8  Q. And that's the same thing that you
9  were doing inside Matthew Gibson's house by
10 recording video, right?
11     MR. ROBINSON: Object to the
12 form.
13     You can answer it.
14 A. I may have recorded a television at
15 one point as I am recording. That doesn't
16 mean that the television was taken. I am not
17 -- I am not documenting -- I am not --
18 everything that I am recording is not being
19 taken. I don't know how else to say that.
20 Q. What did you do with the recording
21 after the search was over? Did you provide
22 it to Judge Goldston?
23 A. I provided it to Debra, which is
24 our case coordinator -- or Donzetta. I can't