IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MATTHEW GIBSON,**

    **Plaintiff,**

v.                                                                        Civil Action No. 5:21-cv-00181
                                                                       Honorable Frank W. Volk

**LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision, JEFF
MCPEAKE, individually, BRIAN WHITE,
individually, BOBBY STUMP, individually,
KYLE LUSK, individually,**

    **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANT LOUISE E. GOLDSTON'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      **COMES NOW** this Defendant, the Hon. Louise E. Goldston, by counsel Jennifer E. Tully, Adam K. Strider, and the law firm of Bailey & Wyant, PLLC, and hereby offers for this Court's consideration the following Memorandum in support of her contemporaneously-filed Motion for Summary Judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure*.

                                      **I.     STATEMENT OF FACTS**

      The Plaintiff, Matthew Gibson, was a party to a divorce action in the Family Court of Raleigh County, West Virginia, appearing for final hearing in that matter on or about September 18, 2018. Defendant Louise E. Goldston is a Family Court Judge of the 13th Family Court Circuit, based in Beckley, Raleigh County, West Virginia, and presided over the Plaintiff's divorce hearing. At that hearing, the Court granted the parties a divorce, and adopted a settlement agreement between the parties as to property distribution. *Complaint, ¶ 11*. The Plaintiff also alleges that, at that

hearing, his ex-wife's attorney, Defendant Lusk, advised the Plaintiff against stating that assets are not at his home, because Judge Goldston would go to his house and look. *Complaint, ¶ 17.*

The Plaintiff's ex-wife subsequently filed a Petition for Contempt, alleging that he had not turned over certain items of property as determined in the settlement agreement, or that some items he did turn over were damaged. *Complaint, ¶ 14.* A hearing on that Petition was held on March 4, 2020, at which the Plaintiff appeared *pro se*. See Exhibit A, *Plaintiff Matthew Gibson's Response to Defendant Louise E. Goldston's Request for Admission to Plaintiff* at Request No. 1. At that hearing, Judge Goldston offered to recess the hearing to give the Plaintiff the opportunity to seek court-appointed counsel. See *id*. at Request No. 3. She also offered for the hearing to be continued in order to give the Plaintiff the opportunity to prepare a response to certain late disclosures by his ex-wife's attorney. See *id*. at Request No. 4. The Plaintiff declined these opportunities and elected to proceed *pro se* without a continuance. See id. at Request No. 5.

In the course of the March 4 hearing, Judge Goldston *sua sponte* recessed the hearing and announced that all parties would reconvene at the Plaintiff's home to determine whether certain disputed items of property were there. *Complaint, ¶ 16.* On the approximately ten (10) minute drive from the courthouse to Plaintiff's home, he and/or his girlfriend, Sharon Masual, researched how to make a motion to disqualify Judge Gol
dston. See Exhibit B, *Depo. of Matthew Gibson* at Pg. 105, Line 24 – Pg. 107, Line 2. Upon arrival at the Plaintiff's home, the Plaintiff immediately approached Judge Goldston and made the Motion to Disqualify. See Exhibit C, *Depo. of Louise Goldston* at Pg. 60, Line 13 – Pg. 61, Line 16; see also Exhibit D, *Video Recording* at 1:30-1:50. Thereafter, Judge Goldston realized that the Plaintiff was attempting to record the interaction, and ordered the recording ceased, noting that this was a hearing, and that family court proceedings may not be recorded. See Exhibit D at 2:50-3:45.

The Plaintiff verbally refused to permit any persons present to enter his home without a search warrant. Judge Goldston informed him that if he refused entry or refused to cease recording, he would be in contempt of court and would be taken to jail. See *id*. Thereafter, the parties entered the Plaintiff's home, and the Plaintiff's ex-wife was permitted to locate certain items which had been allocated to her in the divorce settlement, but had not been provided to her. See *Depo. of Louise Goldston* at Pg. 10, Lines 3-18; see also Exhibit E, *Bailiff's Video* at 2:30-3:00. Ms. Gibson requested to search for certain items, and the Judge denied that request, permitting her only to retrieve items on the list the location of which she knew. See *Depo. of Louise Goldston* at Pg. 10, Lines 15-18; Exhibit E at 2:30-3:00. Ms. Gibson took the items she located which were identified on the property list but not produced. While the Plaintiff will likely dispute whether certain items of property were properly awarded to Ms. Gibson, such a disagreement is irrelevant to the substance of this Motion.

It was plain through the testimony of substantially all involved parties that the interaction at the Plaintiff's home was approached by all involved as a hearing, and that Judge Goldston was addressed as a judicial officer throughout the entirety of the incident. In addition to the fact that the Plaintiff and his ex-wife made Motions and accepted the rulings on them, the fact that this was a family court hearing was mutually understood. As with any court hearing, a bailiff was present. Further, the bailiff took a video recording of the interaction, because it was his understanding that all family court hearings are to be recorded. Judge Goldston's Bailiff, Deputy McPeake, testified in key part as follows:

> Q. Would you agree with me that you did more on March 4, 2020, than merely protect the judge's safety or guard the judge inside Mr. Gibson's house?
>
> A. My role there is protecting the judge as I stated. And all of our hearings, all of them, 100 percent of them, are videotaped. I felt as if we were still in a courtroom setting. So I felt that it would be a good idea to video as much as I could. My battery

3

was low. And I would have videotaped start to end.

Q. But you weren't -- you weren't just taking surveillance footage, you were documenting --

A. I was -- I was documenting what people were saying and what people were taking as much as I could.

Exhibit F, *Depo. of Jeff McPeake* at Pg. 46, Line 12 – Pg. 47, Line 5. Deputy White, a Raleigh County Deputy Sheriff called in by Deputy McPeake, testified likewise as follows:

Q. At some point, did it become apparent to you that the judge was holding a Family Court proceeding inside Mr. Gibson's house?

A. I didn't know if it was a court proceeding. I mean, I understood there were people in there were trying to figure out whose property was whose property. I mean, so, you see a judge there, a bailiff there, and then there's parties and they're talking about property, then I figured it was some sort of -- something to do with the Court.

[…]

Q. Okay. You were aware of the fact that you weren't at the Family Court.

A. Was I aware I wasn't at Family Court?

Q. Yeah.

A. Obviously.

Q. Yes. You were at somebody's house.

A. Right.

Q. Somebody's residence.

A. I was.

Q. Did it not seem unusual to you that you -- you're observing what appears to be a Family Court proceeding inside somebody's private residence?

A. It wasn't unusual to me. As far as I was aware, that -- I mean, that's something that they do. I mean, I didn't know.

Exhibit G, *Depo. of Brian White* at Pg. 10, Lines 8-17; Pg. 11, Line 24 – Pg. 12, Line 5.

Based on the foregoing, the Plaintiff has pled five (5) counts in his Complaint against this Defendant, all pursuant to 42 U.S.C. § 1983. First, he alleges an unlawful search and seizure claim in violation of the Fourth Amendment to the *United States Constitution* for ordering the search of the Plaintiff's home, allegedly without a warrant. *Complaint, ¶¶ 46-62*. Second, he alleges violations of the First Amendment for preventing him from video recording the events. *Complaint, ¶¶ 63-75*. Third, he alleges violations of the Fourteenth Amendment Due Process Clause for allegedly failing to provide him with due process during the contempt hearing. *Complaint, ¶¶ 79-88*. Fourth, he alleges violations of the Equal Protection Clause of the Fourteenth Amendment via his claims that Judge Goldston's practice of home inspections disadvantaged *pro se* litigants. *Complaint, ¶¶ 89-100*. Finally, he alleges that Judge Goldston conspired with Defendant Lusk to take the aforementioned actions. *Complaint, ¶¶ 100-109.*

During the pendency of this matter, the West Virginia Supreme Court of Appeals issued its Opinion in *In re Goldston*, No. 20-0742, 2021 WL 5370473 (W. Va. Nov. 18, 2021), which is the final stage of the judicial disciplinary proceeding arising from the same events as does the instant case. As discussed in this Defendant's Supplemental Memorandum in Support of Defendant Louise E. Goldston's Motion to Dismiss, the Supreme Court's topline holdings in *In re Goldston* were that this Defendant had caused a "search" of the Plaintiff's home, and that she had violated the Code of Judicial Conduct, and ordered the imposition of a censure and a fine. In holding that the relocation of a hearing concerning items of property involved in a divorce settlement to the Plaintiff's home in order to determine whether the property was located there was a "search," rather than a judicial "view," the Supreme Court found it significant that this Defendant went to the property to "locate" things, rather than merely to observe them. See Exhibit H, *WVSCA Order In re Goldston,* at Pg. 15. The Court held that by participating in a "search," which is a quintessentially

5

executive function, this Defendant exceeded her authority as a Judge, and thus violated the Code of Judicial Conduct.

Based on those findings, the Court held that a censure and the imposition of a $1,000 fine were the appropriate sanction. In reaching this conclusion, the Court analyzed the five factors derived from *In re Cruickshanks*, 220 W. Va. 513, 648 S.E.2d 19 (2007) utilized for gauging the appropriateness of disciplinary sanctions against a judge. See Exhibit H at Pg. 20. Of key applicability to this proceeding, the Court held that this Defendant's actions were (1) related to the administration of justice, and (2) carried out in her public persona (i.e., as a judge). See *id*. at Pg. 22.

Based on the foregoing facts, this Defendant now moves this Court for Summary Judgment on the basis of absolute judicial immunity.

## II. STANDARD OF REVIEW

Rule 56(a) of the *Federal Rules of Civil Procedure* provides that:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

F.R.C.P., Rule 56(a). In analyzing the application of Rule 56, this Court has held that:

> At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried; if not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly.

*Workman v. United Artists Theatre Circuit, Inc.*, 84 F.Supp.2d 790 (S.D. W.Va. 2000).

Furthermore, "[s]ummary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kitchen v. Summers Continuous Care Center, LLC*, 552

F.Supp.2d 589, 592 (S.D.W.Va. 2008) (*quoting* F.R.C.P, Rule 56(c)). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, a case involving solely a question of law is ripe to be resolved at the summary judgment stage. *See Rogers v. City of Richmond*, 851 F. Supp. 2d 983, 985 (E.D. Va. 2012); *see also Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2006) ("[a] purely legal question . . . is always capable of decision at the summary judgment stage . . . .") (internal quotation and citation omitted).

It is important to note that genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4th. Cir. 1988). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987.) Mere unsupported speculation is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

### III.  ARGUMENTS

**A.  This Defendant is entitled to summary judgment based on the application of absolute judicial immunity.**

It is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 U.S. Dist. LEXIS

7

86198, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted). As stated, "[j]udicial immunity is an absolute immunity: it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely." *Lemon v. Hong*, No. CV ELH-16-979, 2016 U.S. Dist. LEXIS 71756, 2016 WL 3087451, at *4 (D. Md. June 2, 2016) (citing *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). *Black v. West Virginia*, No. 3:19-cv-00561, 2019 U.S. Dist. LEXIS 172020, at *12-13 (S.D. W. Va. Sep. 11, 2019).

The Plaintiff's claims herein against Judge Goldston should be subject to summary judgment based on the application of this immunity principle to the undisputed facts on the record. As stated above, judges are generally absolutely immune from suits for money damages. See, e.g., *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id*. (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L. Ed. 646 (1872)) (internal quotation marks omitted).

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411,

105 S. Ct. 2806 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. See *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ("Immunity applies even when the judge is accused of acting maliciously and corruptly"); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (allegations of malice are insufficient to overcome judicial immunity).

There are only two sets of circumstances in which judicial immunity is overcome. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's role as a judge. See *Forrester v. White*, 484 U.S. 219, 227-229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Stump* at 356-357. This does not mean, however, that judges are liable for actions which are merely beyond their authority. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id*. at Syl. Pt. (a). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

The scope of this immunity was addressed at length by the Supreme Court in *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). In *Mireles*, a California judge ordered that bailiffs bring an attorney who had failed to appear for the calling of the calendar into the courtroom, and instructed them to use excessive force on him in the process. The Supreme Court held that this action, while certainly violative of the attorney's rights and outside the judge's authority, was not outside his judicial immunity, reasoning as follows:

9

> Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. at 362. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.*, at 356. See also *Forrester v. White*, 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S. at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

*Mireles* at 12-13.

The entire controversy in this respect reduces efficiently to one question. Judges are immune from civil suits for damages – so, was Judge Goldston a judge in this scenario? It should be apparent from the undisputed facts on the case record that the answer is in the affirmative, and this case in the same category as *Mireles*. While it can be argued that she exceeded her authority – and the Supreme Court held as much in *In Re Goldston* – issuing an *ultra vires* order does not remove a judge from the protections of absolute judicial immunity. The record of this case is replete with uncontroverted evidence that she approached the parties to this matter as a judge, and that they approached her as a judge.

The parties convened at the Plaintiff's home in response to an order issued from the bench in an effort to resolve a property dispute in a contested divorce proceeding. The proceeding was attended by a bailiff, who recorded the interaction while non-court personnel were prohibited from recording in accordance with Family Court Rule 8. See W. Va. R. Fam. Ct. 8. Upon arrival, the Plaintiff made a motion to disqualify the Judge and/or for her to recuse herself. Later in the proceedings, the Plaintiff's ex-wife made a motion to be permitted to search the home for items she did not know the location of. These motions were denied, and the parties abided by the Judge's

10

ruling. After the interaction at the Plaintiff's home concluded, the parties returned to the Courthouse to continue proceedings, in which the judge discussed what had occurred at the Plaintiff's home on the case record. See *Depo. of Louise Goldston* at Pg. 18, Lines 8-14. Clearly, irrespective of her authority to act as she did, Judge Goldston approached this situation as a judge, and the parties reacted to her as a judge. This is significant because a key consideration in the judicial immunity analysis is "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

The Supreme Court's rulings in *In Re Goldston* only reinforce this conclusion. The West Virginia Supreme Court of Appeals specifically noted that a Family Court Judge may order the search for and seizure of property in order to secure compliance with a prior order. Her attendance at the alleged "search" can at worst be characterized as an *ultra vires* act in pursuit of a legitimate judicial end – a thing which, under *Mireles*, is within a judicial role and protected by judicial immunity. The record shows that she herself did not participate in the search, but rather simply oversaw it, and continued to act judicially – hearing motions and issuing orders to the parties and law enforcement – throughout the purported search. See *Depo. of Louise Goldston* at Pg. 10, Lines 8-14. This conclusion is supported by the West Virginia Supreme Court of Appeals' holdings that Judge Goldston's actions were related to the administration of justice, and carried out in her public persona (i.e., as a judge). See Exhibit H at Pg. 22. While the West Virginia Supreme Court of Appeals held that for a judge to take part in a search was to act "as an adjunct law enforcement officer," it held that for a judge to do this exposed them to professional discipline under the Code of Judicial Conduct, which applies only to judges.

The undisputed facts on the record of the case indicate that Judge Goldston's actions at issue in this case, irrespective of whether they were within her authority as a Family Court Judge, were

11

taken in her judicial persona. The net of absolute judicial immunity is purposely wide, and this case falls squarely within its bounds. Thus, summary judgment is appropriate on that basis.

## IV. CONCLUSIONS

**WHEREFORE**, based on the foregoing, this Defendant respectfully prays that this Honorable Court **GRANT** her Motion for Summary Judgment, and that this Honorable Court **GRANT** her such other relief as this Honorable Court deems just and proper.

                                                **LOUISE E. GOLDSTON,**
                                                **By Counsel,**

 **/s/ Adam K. Strider**
**Jennifer E. Tully (WV Bar #9356)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**astrider@baileywyant.com**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MATTHEW GIBSON,**

    **Plaintiff,**

**v.**                                        **Civil Action No. 5:21-cv-00181**
                                                  **Honorable Frank W. Volk**

**LOUISE E. GOLDSTON, individually, COUNTY COMMISSION OF RALEIGH COUNTY, a political subdivision, JEFF MCPEAKE, individually, BRIAN WHITE, individually, BOBBY STUMP, individually, KYLE LUSK, individually,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing "**MEMORANDUM IN SUPPORT OF DEFENDANT LOUISE E. GOLDSTON'S MOTION FOR SUMMARY JUDGMENT**" was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, March 28, 2022:

Arie M. Spitz
Kevin A. Nelson
Jason L. Holliday
Dinsmore & Shohl, LLP
P.O. Box 11887
707 Virginia Street East, Suite 1300
Charleston, WV  25339-1887
*Attorney For: Kyle Lusk*

J. Victor Flanagan
Kevin J. Robinson
Pullin Fowler Flanagan Brown & Poe, PLLC
252 George Street
Beckley, WV  25801
*Attorney For: Bobby Stump, Brian White, Jeff McPeake*

John H. Bryan
Law Office of John H. Bryan
PO Box 366
Union, WV  24983
*Attorney For: Matthew Gibson*

  /s/ **Adam K. Strider**
**Jennifer E. Tully (WV Bar #9356)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**astrider@baileywyant.com**