IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MATTHEW GIBSON,

        Plaintiff,

vs.                                                             Civil Action No. 5:21-cv-00181
                                                                Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,

        Defendant.

## PLAINTIFF'S REPLY TO THE RESPONSE OF DEFENDANT LOUISE E. GOLDSTON TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, Matthew Gibson, by counsel, John H. Bryan, and provides the

following reply to the response of Defendant Louise E. Goldston to Plaintiff's Motion for

Summary Judgment:

    **A.**    **Res Judicata / Collateral Estoppel**

Defendant argues that In the matter of Goldston, No. 20-0742 (2021) does not apply as a

final adjudication to the issues pending herein because "absolute judicial immunity was not at

issue in that matter."[1] Defendant essentially argues that no judicial disciplinary proceeding could

result in the adjudication of subsequent Section 1983 issues. By the same logic, underlying

criminal proceedings would always be irrelevant to subsequent Section 1983 litigation. In reality,

---

[1] Def.'s Resp. at 3.

that's not the case, as is well established in federal case law.[2] While "judicial immunity" itself wasn't directly at issue in the underlying disciplinary proceedings, all substantive components which subsequently act to determine the applicability of judicial immunity were at issue, and were litigated by the Defendant, resulting in her receiving an adverse opinion, which she continues to pretend doesn't exist. She now seeks to attack that opinion in the federal courts.

Due to the fact that Defendant Goldston was already provided with a full and fair opportunity to litigate the factual and legal issues arising from her actions of March 4, 2020 in the underlying judicial disciplinary proceedings, she is now categorically barred from further challenging those factual and legal findings litigated therein. Here the Court is presented with identical factual and legal issues as were decided in the Goldston opinion, and to which the Defendant is now bound.

Absolute judicial immunity is lost only when the judge either did not perform a judicial act or when the judge "acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356– 57 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1872). In Archie v. Lanier, 95 F.3d 438, 441 (6th Cir. 1996) the Court examined a claim of judicial immunity in light of allegations of sexual misconduct taken by a judge against employees and litigants who encountered the defendant judge in otherwise judicial settings. The Court determined that, "[w]hether [Judge] Lanier's actions were 'judicial acts' must be answered by looking at the 'nature' and 'function' of the act, not the 'act itself.'" Id. at 441; citing Mireles at 13, 112 S.Ct. at

---

[2] *See generally*, Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 85 (1984) ("We hold, therefore, that petitioner's state-court judgment in this litigation has the same claim preclusive effect in federal court that the judgment would have in the Ohio state courts.") (cited by Gilliam v. Sealey No. 18-1366, No. 18-1402 (4th Cir., 2019)).

288 (quoting <u>Stump</u>, 435 U.S. at 362, 98 S.Ct. at 1107-08).[3] It's less important that a defendant asserting judicial immunity is a "judge," than it is that they are performing an act of the nature normally performed by a judge:

> That is to say, "we look to the particular act's relation to a general function normally performed by a judge" to determine whether the action complained of was indeed a judicial act. Id. Ultimately, it is the "nature" of the function performed, rather than the identity of the person who performed it, that informs a court's immunity analysis. Id. (quoting <u>Forrester</u>, 484 U.S. at 229, 108 S.Ct. at 545).

> This court explained that the analytical key "in attempting to draw the line" between functions for which judicial immunity attaches and those for which it does not is the determination whether the questioned activities are "truly judicial acts" or "acts that simply happen to have been done by judges." It is the nature of the function involved that determines whether an act is "truly" judicial. <u>Sparks v. Character and Fitness Comm. of Kentucky</u>, 859 F.2d 428, 432 (6th Cir.1988) (citations omitted), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989).

<u>Archie v. Lanier</u>, 95 F.3d 438, 441 (6th Cir. 1996). The burden is on the judge to justify the assertion of such immunity. *See* <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273-75, 113 S.Ct. 2606 2616, 125 L.Ed.2d 209 (1993)."

While Defendant cites some examples of the inapplicability of collateral estoppel involving similar sets of operative facts, *e.g.*, in <u>Ridley v. Leavitt</u>, 631 F.2d 358 (4th Cir. 1980), and in <u>Guiden v. Southeastern Public Service Authority</u>, 760 F. Supp. 1171 (E. D. Va. 1991), such examples conflate apples with oranges. None of the cited examples involve actual adjudication of material dispositive issues, such as are at issue in Defendant Goldston's claim of judicial immunity. Her assertion of judicial immunity requires determination of whether she was acting in a judicial capacity on March 4, 2020 when she searched the Plaintiff's home. She claimed, and continues to claim, that the West Virginia Supreme Court is wrong - that in her personal opinion,

---

[3] <u>Mireles v. Waco</u>, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).

she possessed, and continues to possess, the authority to personally search the home of a litigant. That identical state-law legal issue was litigated in the underlying disciplinary proceeding and received a final adjudication from the State Supreme Court, which not only is the final arbiter of West Virginia law, but which also is the final arbiter of judicial disciplinary cases.[4] Defendant Goldston holds the burden to justify the assertion of judicial immunity.[5] She has failed by a long-shot.

Goldston established, as a matter of law, that Defendant Goldston's conduct was "*executive*" in nature, rather than "*judicial*," and that she exercised executive powers forbidden to her under the West Virginia Constitution. Id. at 2. The Court found by clear and convincing evidence that Judge Goldston engaged in a "*search*," rather than a "*view*." The Court wrote that, "Judge Goldston did not go to the property to *observe* the ex-husband's house; she went there to locate and seize certain of its contents - pictures, DVDs, and other items of personal property." Id. at 14 (emphasis original). The Court concluded that her conduct was executive in nature, rather than judicial. "Searches are an activity of the executive department." Id. at 16; citing State ex rel. Parma Cmty. Gen. Hosp. v. O'Donnell, 2013-Ohio-2923, ¶ 7 (stating that "searches are executive in nature.").

The Court found that Judge Goldston was acting in an executive law enforcement capacity on March 4, 2020, even though she was vested with no executive enforcement law enforcement authority. "Indeed, searches are so quintessentially executive in nature that even a judge who participates in one acts 'not * * * as a judicial officer, but as an adjunct law

_____

[4] *See* In re Browning, 192 W. Va. 231, 452 S.E.2d 34 (1994) and Syl. Pt. 3, Committee on Legal Ethics v. Blair, 174 W. Va. 494, 327, S.E.2d 671 (1984).

[5] *See* Buckley v. Fitzsimmons, 509 U.S. 259, 273-75, 113 S.Ct. 2606 2616, 125 L.Ed.2d 209 (1993).

enforcement officer.'" Id. at 16; quoting State ex rel. Hensley v. Nowak, 52 Ohio St. 3d 98, 99,

556 N.E.2d 171, 173 (1990) (per curiam) (quoting Lo-Ji Sales, Inc. v. New York, 442 U.S. 319,

327 (1979)) (holding that a writ of prohibition would not issue to restrain administrative searches

because they are neither judicial nor quasi-judicial acts). The Goldston Court held in no uncertain

terms that Judge Goldston's search was an impermissible exercise of executive powers under the

State Constitution:

> Under our system of government, judges may not exercise executive powers. The West
> Virginia Constitution declares that "[t]he legislative, executive and judicial departments
> *shall be separate and distinct*[.]" W. Va. Const. art. V, § 1 (emphasis added). The
> Constitution further specifies, in unmistakable terms, that no department "shall exercise
> the powers properly belonging to either of the others" and forbids "any person [to]
> exercise the powers of more than one of them at the same time[.]" In light of these clear
> prohibitions, we hold that the West Virginia Constitution forbids a judicial officer to
> participate in a search because a search is an exercise of executive power. W. Va. Const.
> art. 5, § 1. Because Judge Goldston plainly engaged in such a search, we find that the so-
> called "view" was improper.

Id. at 17-18 (citations omitted).

The issues in the disciplinary proceedings did not go uncontested. In Goldston, the Court

noted that Judge Goldston argued that, though she "remains bound by her prior statements of

fact," that "she contends that the parties remain free to "argue questions of law[:]"

> She denies that the Judicial Investigation Commission ever charged her with, or that she
> has ever confessed to, any constitutional violations. On the contrary, she contends that
> "[s]ubsequent research . . . revealed a body of law that supports" her actions. In
> particular, she claims that she had "inherent authority to conduct an onsite visit" and that
> "view[ing] the division of property" allowed the ex-husband to "purge his contempt." She
> contends that, "[u]nlike the execution of a search warrant, the view was conducted with
> judicial oversight. Therefore, it was not per se unreasonable." Ultimately, Judge Goldston
> believes that her conduct was lawful and that, if she is mistaken, her mistake was error,
> not an ethical violation. She urges the Court to "clarify the law and either affirm the
> ruling of the [Judicial Hearing Board] or as the final arbiter conclude that there [wa]s no
> wrongdoing[.]"

5

Id. at 12-13. Thus Defendant Goldston had a full and fair opportunity to address all issues pertaining to the  constitutional validity of her actions taken at the Plaintiff's residence on March 4, 2020, including the specific issue of whether such actions were judicial in nature, or not. She did in fact litigate those issues, represented by counsel.[6] Thereafter, as the final arbiter of such issues in the context in which they arose, the Goldston Court repudiated the Defendant's position, instead holding conclusively that she indeed engaged in a search and seizure of the Plaintiff's residence, as defined by well established federal Fourth Amendment jurisprudence.[7] Regarding the West Virginia State Constitution, the Court expressly concluded that it "forbids a judicial officer to participate in a search because a search is an exercise of executive power."[8]

Any federal court reviewing the application of *res judicata* and collateral estoppel would be hard-pressed to find a more compelling scenario than the present circumstances, where a state supreme court has reviewed a state-law issue involving the same respondent and the same allegations, and issued a published opinion in a proceeding that is uniquely within the original and total jurisdiction of that court, such as in judicial disciplinary proceedings. It's a perfect storm of complete prior adjudication of all material issues in dispute. The Court explicitly condemned Defendant Goldston for the actions which are the subject of the Complaint:

> As we have stated herein, Judge Goldston's conduct constituted a search, rather than a mere view, of the ex-husband's home. The parties appeared in court for a hearing before Judge Goldston. Undoubtedly, the ex-husband could not have anticipated that the hearing would proceed to an unannounced invasion of the sanctity and privacy of his home.

---

[6]

[7] *See* Goldston at 15-17; citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968); Kyllo v. United States, 533 U.S. 27, 32 n.1 (2001); Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 327 (1979); United States v. Barnes, 895 F.3d 1194, 1202 (9th Cir. 2018); United States v. Clyburn, 806 F. Supp. 1247, 1252 (D.S.C. 1992), aff'd, 24 F.3d 613 (4th Cir. 1994).

[8] Id. at 17; citing W. Va. Const. art. V, § 1.

> Regardless of whether the ex-husband had failed to provide belongings he was previously directed to provide, Judge Goldston failed to use the appropriate tools available to her under the law to address such failure because she felt such procedures were ineffective. Instead, she, along with her bailiff, the ex-wife, and the ex-wife's attorney, proceeded to enter the ex-husband's home, over his strenuous objections, directed that he stop recording the incident, and began searching for items on the list of items he was to produce. Such an invasion of the ex-husband's home was an egregious abuse of process.

> Moreover, Judge Goldston clearly left her role as an impartial judicial officer and participated in an executive function when she entered the ex-husband's home to oversee the search….

Goldston at 23. Any attempt by Defendant Goldston to subsequently claim in this civil action, that she did not commit state and federal constitutional violations against the Plaintiff, or that in so doing she was engaging in an alleged judicial act, is effectively an inappropriate collateral attack on the State Supreme Court judgment.

### B.    Rooker-Feldman

Defendant likewise argues that the Rooker-Feldman doctrine doesn't apply because she's not asking this Court to issue an opinion in conflict with In the matter of Goldston, No. 20-0742 (2021). However, that's exactly what Defendant Goldston is requesting. She previously argued to the West Virginia Supreme Court that she was vested with the judicial power to search the Plaintiff's home on March 4, 2020; that she was entitled, as a family court judge, to engage in the behavior currently *sub judice*. The WVSCA disagreed, expressly holding in a published opinion that she was incorrect, and that she had violated the State Constitution by engaging in executive law enforcement behavior, rather than engaging in a judicial act. Yet despite a written censure sanctioning her for her March 4, 2020 actions, Defendant Goldston remains defiant of the WVSCA's holdings. Defendant continues to maintain that the WVSCA is wrong about West

Virginia law, and that she is right.[9] Should Defendant be granted judicial immunity for actions declared by the WVSCA to be executive and law enforcement in nature, such a ruling would directly conflict with Goldston and long-established federal case law on judicial immunity, which would absolutely implicate the Rooker-Feldman doctrine. The WVSCA is the final arbiter of judicial authority under West Virginia law, and the Court couldn't have been much more specific and on-point.

Accordingly, the plaintiff respectfully requests the Court to GRANT his motion and ORDER that summary judgment be entered in his favor on Counts One, Two, Four and Five of the complaint.

MATTHEW GIBSON,
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

---

[9] See, e.g., Goldston Dep. at 8:6-24; 9:1-24; 10-24; 11:1-5; 12:13-21.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

MATTHEW GIBSON,

       Plaintiff,

vs.                             Civil Action No. 5:21-cv-00181
                                 Honorable Frank W. Volk

LOUISE E. GOLDSTON, individually,
COUNTY COMMISSION OF RALEIGH
COUNTY, a political subdivision,
JEFF MCPEAKE, individually,
BRIAN WHITE, individually,
BOBBY STUMP, individually,

       Defendant.

## <u>CERTIFICATE OF SERVICE</u>

       I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFF'S REPLY TO THE RESPONSE OF DEFENDANT LOUISE E. GOLDSTON TO

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT has been served upon counsel of

record by using the CM/ECF System, this the 18th day of April, 2022 and addressed as follows:

Jennifer E. Tully, Esq.               J. Victor Flanagan, Esq.
Adam K. Strider, Esq.               Kevin J. Robinson, Esq.
Bailey & Wyant, PLLC               Pullin Fowler Flanagan, Brown & Poe, PLLC
500 Virginia Street, East, Suite 600     252 George Street
PO Box 3710                     Beckley, WV 25801
Charleston, WV 25337-3710        *Counsel for Raleigh County Defendants*
*Counsel for Louise E. Goldston*

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com